UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

KEYLEE LAWRENCE, COURTNEY BRACCIA,
BRIA WARNER, and WENDY ROSADO Individually
and On Behalf of All Others Similarly Situated,

                                                    Civil Case No.

                              Plaintiffs,

          -against-


NYC MEDICAL PRACTICE, P.C. d/b/a Goals Aesthetics
and Plastic Surgery and SERGEY VOSKIN, M.D.

                              Defendants.

_____

## CLASS ACTION COMPLAINT

Plaintiffs, KEYLEE LAWRENCE, COURTNEY BRACCIA, BRIA WARNER

and WENDY ROSADO, allege of their own personal knowledge and upon

information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.     Plaintiffs bring this collective action pursuant to the Fair Labor Standards

Act, 29 U.S.C. § 201 et seq. ("FLSA") in connection with Defendants' violation of

their statutory obligations to pay overtime compensation, to non-exempt employees,

for work in excess of 40 hours per week, at a rate of 1.5 times his/her regular rate of

pay, pursuant to 29 U.S.C. §207(a).  Plaintiffs seek to recover all unpaid overtime

compensation, liquidated damages and costs, including reasonable attorney's fees.

2.     Plaintiffs also bring this Rule 23 Class action under New York's Wage and

Hour Laws.  More specifically, Plaintiffs assert that they are entitled to unpaid

overtime compensation for their work beyond 40 hours per week, at a rate of 1.5

times their regular rate of pay, unpaid spread of hours premium, statutory penalties, liquidated damages and costs, including reasonable attorney's fees, pursuant to New York Labor Law § 663(1) and the supporting New York State Labor Regulations, 12 N.Y.C.R.R. Part 142.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., a federal statute. As to claims under New York State law, this Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District under 28 U.S.C. § 1391 (b) and (c) because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

5. NYC MEDICAL PRACTICE, P.C. d/b/a Goals Aesthetics and Plastic Surgery ("GOALS") is a domestic professional corporation created and existing under and by virtue of the laws of the State of New York.

6. GOALS maintains offices at 2792 Ocean Ave., Brooklyn, NY 11229.

7. GOALS maintains offices at 251 W 135th St., New York, NY 10030.

8. At all relevant times, SERGEY VOSKIN, M.D. ("VOSKIN") is a physician duly licensed to practice medicine in the State of New York.

9. At all relevant times, VOSKIN was an officer and the sole shareholder of NYC MEDICAL PRACTICE, P.C.

10.     Plaintiff, KEYLEE LAWRENCE, is a resident of Bronx, New York 10470.

11.     Plaintiff, COURTNEY BRACCIA, is a resident of Brooklyn, New York 11214.

12.     Plaintiff, BRIA WARNER, is a resident of Mount Vernon, New York 10550.

13.     Plaintiff, WENDY ROSADO, is a resident of East Elmhurst, New York 11369.

## FACTUAL ALLEGATIONS

14.     At all relevant times, GOALS by its agents, servants and employees, was is in the business of performing cosmetic plastic surgery, body contouring, anti-aging techniques, facial rejuvenation procedures and other aesthetics needs, doing business as Goals Aesthetics and Plastic Surgery.

15.     GOALS is an enterprise engaged in commerce or in the production of goods for commerce, because, inter alia, Defendants have employees that handle goods and materials that have been produced for and moved in commerce.

16.     GOALS' annual gross volume of business exceeds $500,000.00

17.     Plaintiff LAWRENCE worked as a receptionist at the GOALS Harlem office, from approximately May 31, 2018 to August 25, 2018.

18.     GOALS paid Plaintiff LAWRENCE $15.00 per hour.

19.     Plaintiff BRACCIA worked as a patient coordinator at the GOALS Harlem and Brooklyn offices, from approximately February 5, 2018 to June 15, 2018.

20.     GOALS paid Plaintiff BRACCIA $18.00 per hour until April 1, 2018.

21.     GOALS paid Plaintiff BRACCIA $1,067.30 [$26.68 per hour] per week commencing April 1, 2018.

22.     Plaintiff WARNER worked as a receptionist at the GOALS Harlem office, from approximately June 1, 2018 to September 8, 2018.

23.     GOALS paid Plaintiff WARNER $15.00 per hour.

24.     Plaintiff ROSADO worked as a patient coordinator at the GOALS Harlem and Brooklyn offices, from approximately January 2018 to June 15, 2018.

25.     GOALS paid Plaintiff ROSADO $20.00 per hour until May 2018.

26.     GOALS paid Plaintiff ROSADO $1,067.30 [$26.68 per hour] per week commencing May 1, 2018.

27.     At all times material and relevant herein, GOALS was the employer of Plaintiffs within the meaning of 29 U.S.C. §§201 et seq.

28.     At all relevant times, GOALS was the employer of Plaintiffs within the meaning of NY Labor Law§§650 et seq. and the supporting New York State Department of Labor regulations.

29.     At all relevant times, GOALS possessed the authority and power to hire or terminate Plaintiffs.

30.     At all relevant times, GOALS possessed the authority and power to control Plaintiffs' work schedules and conditions of employment.

31.     At all relevant times, GOALS possessed the authority and power to determine the rate and method of the payment of Plaintiff's' wages.

32.     At all relevant times, GOALS possessed the authority and power to determine overtime policy for all of its employees, including Plaintiffs.

33.    At all relevant times, GOALS possessed the authority and power to determine compensation day policies.

34.    At all relevant times, GOALS possessed the authority and power to maintain and/or had unrestricted access to records regarding Plaintiffs' employment.

35.    Upon information and belief, VOSKIN exercised sufficient control of GOALS' day-to-day operations to be considered as an employer of Plaintiffs.

36.    In addition to possessing the authority and powers herein above described in paragraphs 29-34, VOSKIN had the power to hire and fire all of GOALS' employees and GOALS' managers reported directly to VOSKIN.

37.    At all relevant times, VOSKIN was actively involved in managing GOALS' day-to-day operations, payroll, hired and fired employees and oversaw finances of the business.

38.    VOSKIN was exclusively in control of all medical practices, standards, protocols and requirements and interacted with all patients in their care and treatment.

39.    At all relevant times, VOSKIN was a joint employer of Plaintiffs pursuant to 29 CFR 791.2.

40.    At all relevant times, VOSKIN was a joint employer of Plaintiffs pursuant to the provisions of the New York Labor Law ("NYWHL") and *Shim v Millenium Group,* 2010 US Dist LEXIS 6407 [EDNY 2010].

41.    Defendants GOALS and VOSKIN, as joint employers, will be collectively referred herein to as "GOALS."

42. Plaintiff LAWRENCE was required by GOALS and did regularly work over 40 hours per week.

43. Plaintiff BRACCIA was required by GOALS and did regularly work over 40 hours per week.

44. Plaintiff WARNER was required by GOALS and did regularly work over 40 hours per week.

45. Plaintiff ROSADO was required by GOALS and did regularly work over 40 hours per week.

46. At all relevant times, Plaintiff LAWRENCE worked at least 50 hours per week.

47. At all relevant times, Plaintiff BRACCIA worked at least 60 hours per week.

48. At all relevant times, Plaintiff WARNER worked at least 50 hours per week.

49. At all relevant times, Plaintiff ROSADO worked at least 60 hours per week.

50. Plaintiff LAWRENCE regularly worked more than ten (10) hours in a single work day.

51. Plaintiff BRACCIA regularly worked more than ten (10) hours in a single work day.

52. Plaintiff WARNER regularly worked more than ten (10) hours in a single work day.

53. Plaintiff ROSADO regularly worked more than ten (10) hours in a single work day.

54.     Plaintiff LAWRENCE regularly worked more than ten (10) hours in a single work day.

55.     As a condition of employment, GOALS required and demanded that each Plaintiff and members of the Class acknowledge and verify false time records, which understated the true number of hours worked each week.

56.     GOALS fraudulently manipulated and calibrated time keeping modalities to minimize and understate the true number of hours worked each week by Plaintiffs and members of the Class.

57.     Plaintiffs and members of the Class were required to work off-the-clock and did not receive compensation for that time.

58.     Plaintiffs and members of the Class were never paid overtime compensation by GOALS, for all hours worked each week, in excess of 40 hours.

59.     Plaintiffs and members of the Class were never paid overtime compensation by GOALS, at a rate of 1.5 times their regular rate of pay, for all hours worked each week, in excess of 40 hours.

60.     GOALS failed to keep full and accurate records of hours and wages of Plaintiffs and members of the Class, in violation of 29 C.F.R. §§ 516.5, 516.6, NYLL § 661, and NYCRR Tit. 12 §472.2.

61.     To illustrate the foregoing, during the week of 07/30/18 to 08/04/18, Plaintiffs LAWRENCE and WARNER each worked at least 50.00 hours and received compensation in the amount of $600.00.

62.     Plaintiffs' regular rate of pay for this work week was $600.00 ÷ 50 = $ 12.00 and they should have received an overtime rate of $ 12.00 X 1.5= $ 18.00.

63.     Plaintiffs LAWRENCE and WARNER should each have received $18.00 X 10= $ 180.00 overtime compensation for the week.

64.     Similarly, Plaintiffs BRACCIA and ROSADO each worked at least 60.00 hours, and each received compensation in the amount of $ 1,067.30 during the week of 05/20/18 to 05/27/18.

65.     Plaintiffs' regular rate of pay for this work week was $ 1,067.30 ÷ 60 =$17.78 and they should have received an overtime rate of $ 17.78 X 1.5= $ 26.68.

66.     Plaintiffs BRACCIA and ROSADO should each have received $ 26.68 X 20= $ 533.65 overtime compensation for the week.

67.     Other current and former non-health care employees of GOALS are similarly situated, in that they were not paid overtime compensation as mandated by the FLSA.

68.     Other current and former non-health care employees of GOALS, employed in the Brooklyn and Harlem offices, are similarly situated in that they were not paid overtime compensation as mandated by the NYLL.

69.     GOALS intentionally and knowingly circumvented FLSA and NYLL overtime compensation requirements.

70.     GOAL'S wrongful acts, omissions and/or commissions, as alleged herein, were not made in good faith or in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U. S.

Department of Labor and/or the New York Department of Labor, or any administrative practice or enforcement policy of such departments.

71    GOAL'S widespread violations of the above-described federal and state wage and hour statutes and regulations were willful, arbitrary, unreasonable and/or in bad faith.

## COLLECTIVE ACTION ALLEGATIONS

72..    Plaintiffs seek to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), individually, on his own behalf, as well as on behalf of those in the following collective:

> Current and former non-managerial employees of GOALS and/or predecessor companies, who during the applicable limitations period, performed any work for GOALS as receptionists, patient coordinators, or in a similar role, who were not paid overtime compensation at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40 and who consent to file a claim to recover damages for overtime compensation that is legally due to them ("FLSA Plaintiffs").

73.    GOALS treated Plaintiffs and all FLSA Plaintiffs similarly in that they:

(a) performed similar tasks and job functions; below; (b) were subject to the same laws and regulations; (c) were paid in the same or similar manner; (d) were required to work in excess of forty hours in a workweek; and (e) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty (40).

74. At all relevant times herein, GOALS, by its agents, servants and/or employees was and has been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs at an amount equal to the rate of one- and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet they purposefully and willfully chose and choose not to do so.

75. Plaintiffs and all FLSA Plaintiffs are victims of GOALS' pervasive practice of willfully refusing to pay its employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## CLASS ALLEGATIONS

76. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

77. Plaintiffs brings this action on behalf of themselves and all others similarly situated.

78. Plaintiff seeks to represent the following Class:

> **Current and former non-managerial employees of GOALS and/or predecessor companies, who during the applicable limitations period, performed any work for GOALS as receptionists, patient coordinators, or in a similar role, who were not paid overtime compensation at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40.**

79. Plaintiffs are members of the Class they seek to represent.

80. Plaintiffs sue on behalf of themselves and those members of the above-defined class who have filed or will file with the Court, their consents to sue. This is

an appropriate collective or representative action under 29 U.S.C. § 216(b), sometimes referred to as an opt-in class action.

81.     Plaintiffs and the putative class are similarly situated in that they are all subject to GOALS' common plan or practice of refusing to compensate them for overtime compensation at a rate of 1.5 times their regular rate of pay, for all hours in a work week in excess of 40.

82.     As to Plaintiffs' claims for money damages, pursuant to NYLL §650 et. seq., the applicable wage and hours law under which class members worked, Plaintiffs sue on behalf of themselves and all other members of the above-defined class.  Class certification for these state law claims is appropriate under Rule 23(a) and Rule 23(b) (3) because all the requirements of the Rules are met.

83.     The Class is so numerous that joinder of all members is impractical.  Upon information and belief, there are at least 40 members in the Class.  While the exact number and identities of class members are unknown at this time, such information is in the possession of GOALS and can be ascertained through appropriate discovery.

84.     There are questions of law and fact common to the Class.

85.     The named Plaintiffs' claims are typical of those of the Class members. Plaintiffs' claims encompass the challenged practices and course of conduct of GOALS. Plaintiffs' legal claims are based on the same legal theories as the claims of the putative class members.  The legal issues as to which federal and state laws are violated by such conduct apply equally to Plaintiffs and to the class.

86. The named Plaintiffs will fairly and adequately protect the interests of the Class. The Plaintiffs' claims are not antagonistic to those of the putative Class and they have hired competent counsel skilled in the prosecution of class actions.

87. Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

88. To conduct this action as a collective action under the FLSA and as a conventional class action under FRCP Rule 23 presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member and maximizes recovery to them.

## FIRST CLAIM FOR RELIEF
### (INDIVIDUAL CLAIMS –FLSA VIOLATIONS)

89. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

90. GOALS violated the FLSA by failing to compensate Plaintiffs for all hours worked, each work week.

91. GOALS required Plaintiffs to submit false time records which understated the true number of hours worked.

93. GOALS violated the FLSA by failing to properly compensate Plaintiffs for all hours in a workweek in excess of forty (40).

94. GOALS violated the FLSA by failing to compensate Plaintiffs at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40.

95.     GOALS' conduct and employment practices, as described herein, were willful, intentional, unreasonable, arbitrary and in bad faith.

97.     By reason of these unlawful acts, GOALS is liable to Plaintiffs for all unpaid overtime compensation in amounts to be determined at trial, together with such other amounts for liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
### (INDIVIDUAL CLAIMS – NYLL VIOLATIONS)

98.     Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

99.     GOALS required Plaintiffs to submit false time records which understated the true number of hours worked.

100.    GOALS violated the NYLL by failing to compensate Plaintiffs for all hours worked, each week.

101.    GOALS violated the NYLL by failing to properly compensate Plaintiffs for all hours in a workweek in excess of forty (40).

102.    GOALS violated the NYLL by failing to compensate Plaintiffs at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40.

103.    As a result of GOALS' unlawful business practices, as above described, Plaintiffs received wages in an amount less than the wages that they earned.

104.    GOALS' conduct and employment practices, as described herein, were willful, intentional, unreasonable, arbitrary and in bad faith.

105.    By reason of these unlawful acts, GOALS is liable to Plaintiffs for wages for all work performed; compensation for all hours in a workweek in excess of forty (40) at a rate of 1.5 times their regular rate of pay, together with such other amounts for liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to NYLL.

## THIRD CLAIM FOR RELIEF
## (CLASS CLAIMS –NYLL VIOLATIONS)

106.    Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

107.    GOALS required Plaintiffs and members of the Class to submit false time records which understated the true number of hours worked.

108.    GOALS violated the NYLL by failing to compensate Plaintiffs and members of the Class for all hours worked, each week.

109.    GOALS violated the NYLL by failing to properly compensate Plaintiffs and members of the Class for all hours in a workweek in excess of forty (40).

110.    GOALS violated the NYLL by failing to compensate Plaintiffs and members of the Class at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40.

111.    As a result of GOALS' unlawful business practices, as above described, Plaintiffs and members of the Class received wages in an amount less than the wages that they earned.

112.    GOALS' conduct and employment practices, as described herein, were willful, intentional, unreasonable, arbitrary and in bad faith.

113.   By reason of these unlawful acts, GOALS is liable to Plaintiffs and members of the Class, for wages for all work performed; compensation for all hours in a workweek in excess of forty (40) at a rate of 1.5 times their regular rate of pay, together with such other amounts for liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to NYLL.

## FOURTH CLAIM FOR RELIEF
## (COLLECTIVE CLAIMS –FLSA VIOLATIONS)

114.   Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

115.   GOALS violated the FLSA by failing to properly compensate Collective Members for all hours in a workweek in excess of forty (40).

116.   GOALS violated the FLSA by failing to compensate Collective Members at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of forty (40).

117.   GOALS' conduct and employment practices, as described herein, were willful, intentional, unreasonable, arbitrary and in bad faith.

118.   By reason of these unlawful acts, GOALS is liable to Collective Members for all unpaid overtime compensation, in amounts to be determined at trial, together with such other amounts for liquidated damages, prejudgment interest, attorney's fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## FIFTH CLAIM FOR RELIEF (Individual-NYLL Spread of Hours)

119.   Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

120.    At least two (2) times per week, Plaintiffs worked a span of hours that exceeded ten (10) hours in a single day.

121.    GOALS never compensated Plaintiffs for an additional hour of work, on the days that their spread of time exceeded ten (10) hours.

122.    GOALS knew that nonpayment of spread of hours premium was a violation of the NYLL.

123.    GOALS willfully and intentionally failed to compensate Plaintiffs for one hour's pay at the basic New York minimum hourly wage rate when their workdays exceeded ten (10) hours, as required by New York law.

124.    GOALS is liable to Plaintiffs for an award of damages, liquidated damages, pre-post judgment interest, attorneys' fees, costs and other compensation pursuant to the NYLL.

## SIXTH CLAIM FOR RELIEF

## (BRACCIA and ROSADO Commissions pursuant to NYLL §§ 191,193)

125.    Plaintiff repeat and reallege all preceding paragraphs, as if fully set forth herein.

126.    Starting approximately April 1, 2018, GOALS agreed to pay Plaintiffs an annual base salary and a target commission earned upon attainment of performance goals.

127.    GOALS promised to pay Plaintiffs a commission of $100.00 DOLLARS, for each patient counseled by patient coordinators BRACCIA and ROSADO, who proceeded to surgery.

128.    Once a commission is earned, it is legally considered "wages" under the New York Labor Law and subject to all other provisions of the Labor Law regarding payment of wages.

129.    GOALS violated NYLL § 191, by failing to reduce to a writing, signed by both the employer and the Plaintiffs, the agreed terms of employment, including payment of commissions.

130.    GOALS violated NYLL § 191 by failing to create a writing, signed by both the employer and the commission salesperson, setting forth details pertinent to payment of wages, commissions and all other monies earned and payable in the case of termination of employment by either party.

131.    During her employment with GOALS, Plaintiff BRACCIA earned and was entitled to commissions on approximately 150 patient cases.

132.    GOALS never paid any commissions to Plaintiff BRACCIA, despite her repeated demands for remuneration.

133.    During her employment with GOALS, Plaintiff ROSADO earned and was entitled to commissions on approximately 175 patient cases.

134.    GOALS never paid any commissions to Plaintiff ROSADO, despite her repeated demands for remuneration.

135.    Plaintiffs each duly demanded payment of earned commissions, as of the time of their termination of employment and GOALS has refused to compensate Plaintiffs, in whole or in part, for such wages.

136.    GOALS is liable to Plaintiffs BRACCIA and ROSADO for all unpaid wages/earned commissions in such amounts to be determined at trial, together with the costs of this action, including reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Individually and on behalf of all others similarly situated, pray for Judgment as follows:

(a)    Certifying this case as a Rule 23 Class Action, with Plaintiffs as Class representative and their attorneys, as Class counsel;

(b)    Certifying this case as an FLSA Collective Action, with Plaintiffs as Collective representatives and their attorneys, as Collective counsel;

(c)    Judgment for all unpaid overtime compensation to which Plaintiffs and Class Members are lawfully entitled pursuant to the NYLL;

(d)    Judgment for all unpaid overtime compensation to which Plaintiffs and Collective Members are lawfully entitled pursuant to the FLSA;

(e)    Judgment for liquidated damages pursuant to NYLL in such amounts equal to the unpaid overtime compensation to which Plaintiffs and Class Members are lawfully entitled, but which were intentionally and wrongfully withheld by Defendants;

(f)    Judgment for liquidated damages pursuant to FLSA in such amounts equal to all unpaid overtime compensation to which Plaintiffs and Collective Members are lawfully entitled, but which were intentionally and wrongfully withheld by Defendants;

(g) An order directing Defendants to pay Plaintiffs and Class Members their reasonable attorney's fees and all costs connected with this action;

(h) An order directing Defendants to pay Plaintiffs and Collective Members their reasonable attorney's fees and all costs connected with this action

(i) Such other and further relief as this Court may deem just and proper.

JUDGMENT COMMISIONS AND SPREAD OF HOURS

Dated: September 19, 2018

BLAU, LEONARD LAW GROUP, LLC

_____

Steven Bennett Blau
Shelly A. Leonard
23 Green Street, Suite 303
Huntington, NY 11743
(631) 458-1010
sblau@blauleonardlaw.com
sleonard@blauleonardlaw.com

*Attorneys for Plaintiffs*

# DEMAND FOR PRESERVATION

PLEASE TAKE NOTICE that NYC MEDICAL PRACTICE, P.C. d/b/a Goals
Aesthetics and Plastic Surgery and SERGEY VOSKIN, M.D. (herein after
collectively "Defendants"), are under a legal duty to maintain, preserve, retain,
protect, and not destroy any and all evidence, documents and data, both electronic
and hard copy, and/or tangible items pertaining or relevant to property discoverable
regarding to all of the claims made in this litigation.

This notice applies to Defendants' on- and off-site computer systems and
removable electronic media, plus all computer systems, services, and devices
(including all remote access and wireless devices) used for your overall operation.
This includes, but is not limited to, e-mail and other electronic communications;
electronically stored documents, records, images, graphics, recordings,
spreadsheets, databases; calendars, system usage logs, contact manager
information, telephone logs, internet usage files, deleted files, cache files, user
information, and other data. Further, this notice applies to archives, backup and
disaster recovery tapes, discs, drives, cartridges, voicemail and other data. All
operating systems, software, applications, hardware, operating manuals, codes keys
and other support information needed to fully search, use, and access the
electronically stored information.

Electronically stored information (hereinafter "ESI") should be afforded the
broadest possible definition and includes (by way of example and not as an exclusive
list) potentially relevant information electronically, magnetically or optically stored
as:

- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and,
- Executing drive or file defragmentation or compression programs.

In order to assure that your obligation to preserve documents and things will be met, please forward a copy of this letter to any and all persons and entities with custodial responsibilities for the items referred to herein. Notify all individuals and affiliated organizations of the need and duty to take the necessary affirmatives steps to comply with the duty to preserve evidence.

Specifically, you are instructed not to destroy, disable, erase, encrypt, alter, or otherwise make unavailable any electronic data and/or evidence relevant to potential claims and to take reasonable efforts to preserve such data and/or evidence.