USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/4/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

KEYLEE LAWRENCE, COURTNEY BRACCIA, BRIA WARNER, and WENDY ROSADO, individually and on behalf of all others similarly situated,

                              Plaintiffs,

-against-

NYC MEDICAL PRACTICE, P.C. d/b/a Goals Aesthetics and Plastic Surgery, and SERGEY VOSKIN, M.D.

                              Defendants.

------------------------------------------------------------ X

1:18-cv-8649-GHW

MEMORANDUM OPINION AND ORDER

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

In 2018, four employees of a New York plastic surgery practice filed suit against their employer, alleging that it had violated various provisions of the Fair Labor Standards Act and the New York Labor law. The employer answered and asserted counterclaims under federal and state law against a subset of the plaintiffs, alleging that they had breached their employment agreement, misappropriated trade secrets under the Defend Trade Secrets Act and New York common law, and tortiously interfered with contract. The Plaintiffs ask the Court to dismiss the Defendants' counterclaims in their entirety. Because the Defendants' only federal counterclaim is inadequately pleaded, and the Court declines to exercise supplemental jurisdiction over the remaining state law counterclaims, the Plaintiff's motion to dismiss is GRANTED.

## II. BACKGROUND

### A. The Plaintiffs File Suit

In 2018, Keylee Lawrence, Courtney Braccia, Bria Warner, and Wendy Rosado (collectively, the "Plaintiffs") worked for NYC Medical Practice P.C., which conducts business under the name Goals Aesthetics and Plastic Surgery ("Goals"). Lawrence and Warner worked as receptionists. *See* Dkt. No. 5, Complaint ("Compl.") at ¶¶ 17, 22. Braccia and Rosado were patient coordinators. *See id.* at ¶¶ 19, 24. Goals is in the business of performing cosmetic plastic surgery, body contouring, anti-aging techniques, facial rejuvenation processes, and other aesthetic procedures. *See id.* at ¶ 14. Dr. Sergey Voskin is a physician and Goals' sole shareholder. *Id.* at ¶¶ 8-9.

During the time that they worked for Goals, the Plaintiffs allege that the Defendants required them to work more than ten hours in a single day and in excess of 40 hours per week. *See id.* at ¶¶ 42-49, 51-54. The Plaintiffs further claim that the Defendants required them to work off-of-the-clock and that they did not receive compensation for this time. *Id.* at ¶ 57. Furthermore, as a condition of their employment, the Plaintiffs contend that the Defendants forced them to maintain false time records, which understated the number of hours that they worked each week. *Id.* at ¶ 54. The Plaintiffs also allege that the Defendants manipulated their time records. *Id.*

On September 25, 2018, the Plaintiffs filed a hybrid putative class and collective action under the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL") on their behalf and on behalf of a purported class of all other similarly situated individuals. *See* Compl. In the complaint, the Plaintiffs allege that the Defendants violated the FLSA and NYLL by: (i) failing to compensate them for all hours worked each work week; (ii) requiring the Plaintiffs to submit false time records that understated the true number of hours that they worked; (iii) failing to properly compensate them for all hours worked in a work week in excess of forty; and (iv) failing to

compensate them at a rate of 1.5 times their regular rate of pay for all hours in a workweek in excess of forty.

The Plaintiffs also allege that the Defendants violated certain provisions of the NYLL. Specifically, the Plaintiffs claim that the Defendants failed to pay "spread of hours pay" for days in which they worked a timespan that exceeded ten hours. *Id.* at ¶¶ 120-21. Additionally, Braccia and Rosado contend that the Defendants violated NYLL § 191 by failing to reduce to writing the agreed terms of their employment, including details pertinent to the payment of wages and commissions, for their work as patient coordinators. *Id.* at ¶¶ 125-36. Braccia and Rosado allege that Goals represented that they would receive a commission of $100 for each patient who they counseled and who proceeded to surgery. *Id.* at ¶ 127. Braccia claims that she counseled 150 patients to proceed to surgery; Rosado contends that she counseled 175 patients to proceed to surgery. *Id.* at ¶¶ 131, 133. Despite repeated demands, Braccia and Rosado allege that the Defendants have not paid their commissions. *Id.* at ¶¶ 134-35.

**B. The Defendants Answer and Assert Counterclaims**

On November 30, 2018, the Defendants filed their answer. Dkt. No. 28, Answer to Complaint, Third Party Complaint, Counterclaim (the "Answer"). In the Answer, the Defendants assert federal and state law counterclaims against Braccia and Rosado. The Defendants allege that, before joining Goals, Braccia worked for a plastic surgeon named Dr. Joseph Pober. *See* Answer at 19, ¶ 4. In late 2017 or early 2018, Goals retained Dr. Pober as an independent contractor. *Id.* at ¶ 5. Dr. Pober brought Braccia with him when he joined Goals. *Id.* at ¶ 6. The Defendants allege that Braccia decided to terminate her employment with Dr. Pober and accept a full-time position as a patient coordinator with Goals. *Id.* at ¶ 7. Around the same time, Goals hired Rosado as a full-time patient coordinator. As part of their onboarding, the Defendants allege that Rosado and Braccia signed an acknowledgement of and receipt of Goals' terms and conditions of employment

3

which, "contain[ed] non-compete provisions, trade secret protections, and other terms and conditions." *Id.* at ¶ 8.

As patient coordinators, Rosado and Braccia were charged with contacting individuals who had expressed an interest in receiving treatment, to walk them through the treatment process, and to follow-up after the procedure. *Id.* at 20, ¶ 13. By virtue of those responsibilities, Rosado and Braccia had access to personal contact information for patients. *Id.* at ¶ 15. Rosado and Braccia resigned from their positions on relatively short notice.[1] *Id.* at ¶ 23. The Defendants contend that Braccia broke into Goals' employment records and stole her employment file. *Id.* at ¶ 24. Shortly thereafter, the Defendants claim that Rosado and Braccia began working for Dr. Pober. *Id.* at ¶ 25. The Defendants allege that current and prospective Goals patients explained that Rosado and Braccia had contacted them and encouraged them to obtain services from Dr. Pober instead of Goals. *Id.* at ¶ 26. At least one individual, the Defendants aver, met with Dr. Pober instead of Goals at Braccia's encouragement. *Id.* at 22, ¶ 27. This caused Goals to lose out on no less than $6,000. *Id.* In addition to consulting current and prospective customers, the Defendants contend that Rosado and Braccia have used Goals' methods for advertising and communicating with prospective patients for the benefit of themselves and others in violation of the non-compete agreement and trade secret provisions that they signed. *Id.* at ¶ 28.

In their Answer, the Defendants assert five counterclaims against Rosado and Braccia. First, the Defendants assert a breach of contract claim because they allege that Rosado and Braccia violated the non-compete provisions in their employment agreements. *See id.* at 22-23, ¶¶ 31-36. Second, the Defendants assert a second breach of contract claim against Rosado and Braccia, alleging that they violated the trade secret misappropriation provisions of their employment agreements. Third, the Defendants allege that Rosado and Braccia violated the Defend Trade

---

[1] The Defendants do not provide Rosado and Braccia's resignation date.

Secrets Act (the "DTSA"), 18 U.S.C. § 1836. *Id.* at 24, ¶¶ 42-49. Fourth, the Defendants allege that Rosado and Braccia misappropriated trade secrets in violation of New York common law. *Id.* at ¶¶ 50-54. Finally, the Defendants assert a claim of tortious interference with contract against Rosado and Braccia. *Id.* at ¶¶ 58-62.

### C. Procedural History

The Plaintiffs filed their complaint on September 25, 2018. Dkt. No. 5. The Defendants answered on November 30, 2018. Dkt. No. 28. As described above, the Defendants asserted five counterclaims against only Rosado and Braccia. On February 7, 2019, the Plaintiffs filed a motion to dismiss the Defendants' counterclaims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and for leave to amend the complaint pursuant to Rule 15(a) to assert a cause of action for retaliation under the FLSA ("Plaintiff's Motion"). Dkt. No. 36. The Defendants filed their opposition (the "Opposition") on February 12, 2019. Dkt. No. 37. The Plaintiffs filed their reply (the "Reply") on February 19, 2019. Dkt. No. 38.

## III. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual

5

allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' A complaint must therefore contain more than 'naked assertion[s] devoid of further factual enhancement.' Pleadings that contain 'no more than conclusions . . . are not entitled to the assumption of truth' otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557). In addition to the facts alleged in the complaint, courts "may consider any written instrument attached to the complaint, [and] statements or documents incorporated into the complaint by reference . . . ." *ATSI*, 493 F.3d at 98. Courts may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

### B. Motion to Dismiss under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits. In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotations, brackets, and citations omitted).

### IV. DISCUSSION

#### A. Plaintiffs' Motion to Dismiss Defendants' Counterclaims

The Defendants assert counterclaims against Rosado and Braccia, alleging that they violated the DTSA, misappropriated trade secrets as prohibited by New York common law, breached their employment agreement, and tortuously interfered with contract. The Plaintiffs move to dismiss all of the Defendants' counterclaims. The Court first addresses the sole federal counterclaim that the Defendants assert: violation of the DTSA.

##### i. The Defendants Fail to Plead a Misappropriation Claim under the DTSA

The DTSA, enacted on May 11, 2016, provides a private cause of action to the "owner of a trade secret that is misappropriated." 18 U.S.C. § 1836(b)(1). "The DTSA defines 'misappropriation' to include 'acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means' or 'disclosure or use of a trade secret of another without express or implied consent' in specified circumstances." *Opternative,*

7

*Inc., v. JAND, Inc.*, No. 1:17–CIV–6936 (JFK), 2019 WL 624853, at *6 (S.D.N.Y. Feb. 13, 2019) (quoting 18 U.S.C. § 1839(6)). The DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *AUA Private Equity Partners, LLC v. Soto*, No. 1:17–CV–8035-GHW, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018). The DTSA defines a trade secret as "all forms and types of financial, business, scientific, economic, or engineering information . . . (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) . . . derives independent economic value . . . from not being generally known . . . [or] reasonably ascertainable . . . [to] another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(A)-(B).

The Defendants allege that Rosado and Braccia misappropriated trade secrets by "using their specialized training and skills learned by Goals, including their trade secrets with respect to patient coordination . . . [,]signing up patients . . . [,] advertising and other techniques" with a subsequent employer. Answer at ¶ 39. Defendants also argue that Rosado and Braccia stole Goals' patient lists. *Id.* at ¶ 40. They provide limited additional details about these alleged trade secrets or the patient lists.

The Defendants fail to plead adequately that Rosado and Braccia misappropriated trade secrets in violation of the DTSA. "Although the Second Circuit has not expressly articulated a specificity requirement, district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Medidata Sols., Inc. v. Veeva Sys. Inc.*, No. 17–CIV–589 (LGS), 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018) (citing *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 258 (S.D.N.Y. 2014) (collecting cases)). To be sure, "'[t]rade secrets need not be disclosed in detail in a complaint alleging misappropriation,'" *Tesla Wall Sys., LLC v. Related Companies, L.P.*, No. 17-CV-5966 (JSR), 2017 WL 6507110, at *10 (S.D.N.Y. Dec. 18, 2017) (internal

8

citation and quotation marks omitted), and "it is not necessary to disclose every detail of an alleged trade secret in a complaint." *Universal Processing LLC v. Weile Zhuang*, 17 CV 10210-LTS, 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018). Nevertheless, "the pleading standard set forth in *Twombly* and *Iqbal* requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value and measures taken to safeguard it to support an inference that the information qualifies as a trade secret." *Id.* Although

> there is no one-size fits all definition to a trade secret [under the DTSA and New York trade secret misappropriation law] . . . courts generally consider the following factors to determine its contours:
> 1. the extent to which the information is known outside of the business;
> 2. the extent to which it is known by employees and others involved in the business;
> 3. the extent of measures taken by the business to guard the secrecy of the information;
> 4. the value of the information to the business and its competitors;
> 5. the amount of effort or money expended by the business in developing the information; [and]
> 6. the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* (citing *In re Document Techs. Litig.*, 275 F. Supp. 3d 454, 462 (S.D.N.Y. 2017)); *see also Elsevier Inc. v. Doctor Evidence, LLC*, No. 17–CV–5540, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (applying these factors to determine whether party had pleaded the existence of a trade secret under the DTSA).

The Defendants have not adequately pleaded that the information that they allege that Rosado and Braccia misappropriated constitute trade secrets under the DTSA. The Defendants describe the alleged trade secrets at the highest level of abstraction. They allege, for instance, that Rosado and Braccia used the "trade secrets . . . including the methods for advertising and communicating with prospective patients." Answer at ¶ 29. They further plead that the trade secrets that Rosado and Braccia misappropriated pertained to "patient coordination and signing up

9

patients" and that the supposed trade secrets "relate to services used, sold, and ordered in, or intended to be used, sold and/or ordered in interstate and/or foreign commerce." *Id.* at ¶¶ 39, 44. Listing general categories of information, as Defendants have done here, does not adequately plead the existence of a trade secret. *See Elsevier Inc.*, 2018 WL 557906, at *4, *6 (S.D.N.Y. Jan. 23, 2018) (explaining that a plaintiff "must do more than simply list general categories of information" to plead a misappropriation claim under the DTSA).

The Defendants fail to include any allegations supporting the various factors that define the "contours" of a trade secret: the information's value, the extent to which it is known by those within and outside of the business, the amount of effort or money spent to develop the information, and the ease with which the information could be acquired or developed by outsiders. The only factor that the Defendants arguably address in the Answer is factor three—the extent of measures taken to guard the secrecy of the information. Still, however, the Defendants offer only the conclusory statement that they "have taken reasonable steps to protect the secrecy of its confidential and trade secret documents and information." Answer at ¶ 45. The complaint offers scant facts about what these "reasonable steps" are. The Defendants allege that Rosado and Braccia signed employee agreements that contained "trade secret protections." *Id.* at ¶ 8. However, the Defendants offer no further facts regarding these "trade secret protections." To the extent that the "trade secret protections" are confidentiality agreements, "taking steps to protect information through a confidentiality agreement alone does not suggest the existence of trade secret." *Elsevier, Inc.*, 2018 WL 557906, at *6. Here, the Defendants have only addressed one factor that courts consider when determining the "contours of a trade secret." Even so, their pleading falls far short of the specificity required to plead adequately that a party took reasonable measures to protect the secrecy of its confidential and trade secret documents and information. *Cf. Expertconnect, LLC v. Mayokia Fowler, et. al.*, No. 18–CIV–4828 (LGS), 2019 WL 3004161, at *2 (S.D.N.Y. July 10, 2019)

(discussing an adequately pleaded complaint for misappropriation of trade secrets); *Gen. Sec. Inc. v. Commercial Fire & Sec., Inc.*, No. 17–CV–1194 (DRH)(AYS), 2018 WL 3118274, at *1-2 (E.D.N.Y. June 25, 2018) (same).

The general, unadorned allegations that Defendants plead do not sufficiently allege the existence of a trade secret protected by the DTSA. *Compare, e.g.*, *PaySys Int'l, Inc. v. Atos Se*, No. 14–Civ.–10105, 2016 WL 7116132, at *10 (S.D.N.Y. Dec. 5, 2016) (holding that the complaint was insufficiently specific when the trade secrets were identified as "the Products, all Enhancements to the Products and all proprietary information, data, documentation and derivative works related to the products") *with Next Commc'ns, Inc. v. Viber Media, Inc.*, No. 14–CV–8190 (RJS), 2016 WL 1275659, at *4 (S.D.N.Y. Mar. 30, 2016) (holding that plaintiff adequately pleaded trade secret where complaint alleged "the specific components used, the way [the] components fit together … and the process by which [the] components interact[ed] . . . without revealing the actual technical details."); *Bancorp Servs., LLC et al. v. Am. Gen. Life Ins. Co.*, No. 14–CV–9687, 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016) (concluding that plaintiff adequately pleaded a trade secret because the complaint explained the value of the information, the amount of time it took plaintiffs to develop the information, and details of the accounting methodology plaintiffs created); *Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 171-73 (E.D.N.Y. 2018) (similar). Ultimately, "[g]eneral allegations regarding confidential information and processes simply do not give rise to a plausible trade secrets claim." *Elsevier Inc.*, 2018 WL 557906, at *6. Because the Defendants have not sufficiently alleged the existence of a trade secret protected by the DTSA, their claim for trade secret misappropriation under the DTSA is dismissed. The Court grants Defendants leave to replead this claim.

ii. <u>The Court Declines to Exercise Supplemental Jurisdiction over the Defendants' State Law Counterclaims</u>

In addition to their claim under the DTSA, the Defendants also assert state law counterclaims for breach of contract, trade secret misappropriation under New York common law, and tortious interference with contract. The Plaintiffs move to dismiss the Defendants' state law counterclaims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. For the reasons set forth below, the Court declines to exercise supplemental jurisdiction over the Defendants' state law counterclaims and, therefore, dismisses them without prejudice pursuant to Rule (12)(b)(1) for lack of subject matter jurisdiction.

"In the case of counterclaims, a court may exercise jurisdiction when there is an independent basis for subject-matter jurisdiction or if there is a basis to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367." *Turban v. Bar Giacosa Corp.*, No. 19-CV-1138 (JMF), 2019 WL 3495947, at *1 (citing *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 212-13 (2d Cir. 2004)). The Defendants do not contend that an independent basis exists for the Court to exercise jurisdiction over the state law counterclaims. *See* Opposition at 11-15. Instead, the Defendants argue that the Court can and should exercise supplemental jurisdiction over their state law counterclaims. *See id.*

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "For purposes of section 1367(a), claims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)). "In determining whether two disputes arise from 'a common nucleus of operative fact,' we have traditionally asked

whether 'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court.'" *Actman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lydonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

The facts underlying the Plaintiffs' claims under the FLSA and NYLL do not substantially overlap with those relevant to the Defendants' state law counterclaims, largely because they focus on different time periods: Plaintiffs' claims arose during the time of their employment; Defendants' proposed counterclaims arose from Plaintiffs' conduct after they left their employ. The facts giving rise to the Plaintiffs' claims are related to the conditions of their employment while they worked for the Defendants. Specifically, the Plaintiffs' claims flow from the Defendants' payment, timekeeping, and overtime policies, as well as—with respect only to Rosado and Braccia—whether the Defendants reduced their employment agreement to writing. In comparison, the Defendants' counterclaims focus on conduct that allegedly took place after two of the plaintiffs stopped working for Goals. Because the facts that are integral to the Defendants' counterclaims focus on conduct that allegedly took place after Rosado and Braccia stopped working for Goals, they do not substantially overlap with the facts relevant to the Plaintiffs' wage and hour claims. *See, e.g.*, *Turban*, 2019 WL 3495947, at *4.

While the Defendants' state law counterclaims and the Plaintiffs' wage and hour claims arise from the same employment relationship, that, by itself, is insufficient to establish a substantial overlap between the facts underlying each of the claims. In FLSA cases, "[m]any courts have held that, even if two claims arise out of the same employment relationship, that relationship alone is not enough to sustain supplemental jurisdiction." *Nicholsen v. Feeding Tree Style, Inc.*, No. 12-cv-6236-JPO, 2014 WL 476355, at *2 (S.D.N.Y. Feb. 6, 2014); *see also Yahui Zhang v. Akami Inc.*, No. 15-cv-4946-

13

VSB, 2017 WL 4329723, at *10 (S.D.N.Y. Sept. 26, 2017) (collecting cases); *Turban*, 2019 WL 3495947, at *4; *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 467-68 (S.D.N.Y. 2008).

Regardless of whether the Defendants' state law counterclaims here satisfied the "same case or controversy" requirement of § 1367(a), the Court would decline to exercise supplemental jurisdiction over them pursuant to § 1367(c). "Where section 1367(a) is satisfied, 'the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c).'" *Shahriar*, 659 F.3d at 245 (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 445, 448 (2d Cir. 1998)). The enumerated categories are: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

In this case, the Defendants' state law counterclaims would substantially predominate over the Plaintiffs' wage and hour claims. The Defendants' state law counterclaims would significantly broaden the scope of this litigation. The Plaintiffs' claims are relatively straightforward: they will require proof of facts regarding their pay, overtime pay, and the accuracy of the Defendants' time records. The state law counterclaims that the Defendants seek to assert would require inquiry into a host of additional facts. Among other things, the Defendants' state law counterclaims would introduce questions regarding whether Rosado and Braccia returned to work for Dr. Pober after leaving Goals, whether Rosado and Braccia employed, as the Defendants allege, Goals' patient coordination and advertising techniques (which would require extensive proof regarding the nature of those skills and techniques), whether Rosado and Braccia retained and used Goals' patient list and contact information after ending their employment, and information about any contractual arrangements between Plaintiffs and Defendants. Given the nature and extent of the proof that the

14

Defendants' state law counterclaims entail, the Defendants' state law counterclaims substantially predominate over the claim over which the Court has original jurisdiction—the Plaintiffs' relatively straightforward wage and hour action brought under the FLSA. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966) ("[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."); *Thomas v. EONY LLC*, No. 13-cv-8512-JPO, 2015 WL 1809085, at *8 (S.D.N.Y. Apr. 21, 2015) (declining to exercise supplemental jurisdiction where "attempt to litigate largely unrelated nonfederal claims in the same action . . . would result in the engrafting of a distinct, more complicated litigation onto a straightforward wage and hour case.").

Moreover, the values of judicial economy, convenience, fairness, and comity do not weigh in favor of exercising supplemental jurisdiction here. "[W]here at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values . . . [of] economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). Here, declining to exercise jurisdiction promotes those values. Judicial economy and convenience would not be served by exercising supplemental jurisdiction here because, as set forth above, the Defendants' state law counterclaims would significantly complicate what will otherwise be a relatively straightforward wage and hour case. Furthermore, because this case is still in its early stages, any inconvenience to the Defendants to file the counterclaims in state court would be minor. *See Yahui Zhang*, 2017 WL 4329723, at *11. Because this case is brought as a hybrid putative class and collective action, judicial economy would be promoted by serving any ancillary claims against Rosado and Braccia, two of the named plaintiffs, to be pursued in a separate action.

Finally, allowing the Defendants to pursue their state law counterclaims in state court would avoid needless decisions of state law by this Court, which promotes the interests of comity. *See Moran v. Tryax Realty Mgmt, Inc.*, No. 15-cv-08570-RJS, 2016 WL 3023326, at *4 (S.D.N.Y. May 23, 2016) ("Furthermore, resolution of the state-law claims in state court will avoid 'needless decisions of state law' by this Court, which also promotes the interests of comity and justice.") (quoting *Gibbs*, 383 U.S. at 726). Accordingly, even if § 1367(a) were satisfied, the Court would decline to exercise supplemental jurisdiction over the Defendants' state law counterclaims pursuant to § 1367(c).

Therefore, the Court declines to exercise supplemental jurisdiction over the Defendants' state law counterclaims. Accordingly, the Court dismisses the Defendants' state law counterclaims without prejudice.

### B. Plaintiffs' Motion for Leave to Amend

The Plaintiffs have requested leave to amend their complaint to add a claim for retaliation under the FLSA. Plaintiff's Motion at 5. The Plaintiffs allege that the Defendants retaliated against them by asserting "frivolous" counterclaims designed to discourage the Plaintiffs and potential class or collective members from participating in the FLSA lawsuit. *See id.* at 6. In response, the Defendants argue that allowing the Plaintiffs to amend their complaint would be futile because their FLSA retaliation claim would not survive a motion to dismiss. Opposition at 17. For the reasons explained below, the Court denies the Plaintiffs leave to amend their complaint.

Under the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within 21 days of serving it or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). After that point, absent written consent from the opposing party, leave to amend must be obtained from the district court. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) provides that courts "should freely give leave when justice so

requires." "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (citation omitted); *see also id.* ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."). An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Therefore, a plaintiff must allege facts that—accepted as true—are sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The FLSA provides that it is "'unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under' [FLSA]." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (quoting 29 U.S.C. § 215(a)(3)). Decisions by judges in this Circuit have held that "instituting bad faith or groundless counterclaims or instituting bad faith litigation . . . constitutes actionable retaliation." *Jian Zhong Li v. Oliver King Enterprises, Inc.*, 14-CV-9293 VEC, 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015); *see also Chan v. Big Geyser, Inc.*, 1:17-CV-06473 (ALC), 2018 WL 4168967, at *11 (S.D.N.Y. Aug. 30, 2018) ("[C]ourts have held that filing baseless counterclaims against FLSA plaintiffs . . . can constitute adverse employment action sufficient to state a claim for retaliation"); *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 114 (S.D.N.Y. 2015); *Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 279 (E.D.N.Y. 2013); *Torres*, 628 F. Supp. 2d at 466-67. At the same time, "[w]hether or not an employee can claim retaliation because he or she has been sued in a well-founded lawsuit is an open question." *Marchiano v. Berlamino*, No. 10 CIV. 7819 LBS, 2012 WL 4215767, at *6 (S.D.N.Y. Sept. 20, 2012). Indeed, "there may be constitutional

limitations on retaliation claims involving the exercise of such legal rights . . . ." *Holleman v. Art Crating Inc.*, No. 12 CIV. 2719 VMS, 2014 WL 4907732, at *49 (E.D.N.Y. Sept. 30, 2014).

The ability of the Plaintiffs to prevail on the proposed retaliation claim will turn on an assessment of the merits of the Defendants' proposed counterclaims. But here, the Court has dismissed the counterclaims in their entirety. As a result, an amendment of the complaint to include the proposed retaliation claims at this time seems premature. If the Defendants do not pursue the proposed counterclaims in this Court following this decision, there will be no basis to litigate the merits of the claims in this case—that is, unless the Plaintiffs pursue the proposed retaliation claim, which would necessarily bring the proposed counterclaims and their merit front and center. Litigation of a retaliation claim with respect to the proposed counterclaims might well undermine the rationale behind the Court's decision to decline supplemental jurisdiction over the state law counterclaims. As a result, at this time the Court denies the Plaintiffs' request for leave to amend the complaint to add the proposed retaliation claim without prejudice.

## V. CONCLUSION

For the reasons stated above, the Plaintiffs' motion to dismiss the Defendants' counterclaims is GRANTED. The Defendants' counterclaims are dismissed in their entirety without prejudice. The Court grants the Defendants leave to replead those claims. The Plaintiffs' motion to amend their complaint to assert a cause of action for retaliation under the FLSA is DENIED without prejudice. Any amended complaint is due no later than thirty days from the date of this order.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 35.

SO ORDERED.

Dated: September 3, 2019
      New York, New York

_____
GREGORY H. WOODS
United States District Judge