UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_ 5/20/2021 __
```

-------------------------------------------------------------- X
                    :

KEYLEE LAWRENCE, COURTNEY       :
BRACCIA, BRIA WARNER, and WENDY   :
ROSADO, individually and on behalf of all others :
similarly situated,                :
                    :
                    :           1:18-cv-8649-GHW
             Plaintiffs, :
                    :      MEMORANDUM OPNION
         -against-        :        AND ORDER
                    :

NYC MEDICAL PRACTICE, P.C. d/b/a Goals :
Aesthetics and Plastic Surgery, and SERGEY :
VOSKIN, M.D.,             :
                    :
           Defendants.:
                    :
-------------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

## I. INTRODUCTION

In 2018, four employees of a New York plastic surgery practice filed suit against their

employer, alleging that it had violated various provisions of the Fair Labor Standards Act (the

"FLSA") and the New York Labor Law (the "NYLL"). Plaintiffs have filed motions asking the

Court to certify a collective action under 29 U.S.C. § 216(b) to pursue their FLSA claims and a class

action under Fed. R. Civ. P. 23 to pursue their NYLL claims. Plaintiffs have proposed a collective

and class consisting of patient coordinators and receptionists of the plastic surgery practice and its

predecessors whose rights were violated under the FLSA and NYLL. Because Plaintiffs were

subject to the same compensation policies and are thus similarly situated to other receptionists and

patient coordinators at the plastic surgery practice, the Court will GRANT Plaintiffs' motion for

collective certification in part. And because Plaintiffs have met the requirements of Fed. R. Civ. P.

23(a) and 23(b)(3), the Court will also GRANT Plaintiffs' motion for class certification in part.

## II. BACKGROUND

### A. Facts

In 2018, Keylee Lawrence, Courtney Braccia, Bria Warner, and Wendy Rosado (collectively, the "Plaintiffs") worked for NYC Medical Practice P.C.  Declaration of Steven Blau ("Blau Decl."), Dkt. No. 123, Ex. B, Deposition of Keylee Lawrence ("Lawrence Deposition"), at 58:25–59.  NYC Medical Practice P.C. conducts business under the name Goals Aesthetics and Plastic Surgery ("Goals").  Blau Decl. Ex. A, Deposition of Sergey Voskin ("Voskin Deposition"), at 10:15–21. Goals' sole shareholder is physician Sergey Voskin (together with Goals, "Defendants").  *Id.* at 11:17–23.  Lawrence and Warner worked as receptionists.  Lawrence Deposition at 23:14–18; Blau Decl. Ex. D, Declaration of Bria Warner ("Warner Decl.") ¶ 2.  Braccia and Rosado were patient coordinators.  Blau Decl. Ex. F, Deposition of Courtney Braccia ("Braccia Deposition") at 21:11–13; Blau Decl. Ex. G, Declaration of Wendy Rosado ("Rosado Decl.") ¶ 2.  Goals is in the business of performing cosmetic plastic surgery, body contouring, anti-aging techniques, facial rejuvenation processes, and other aesthetic procedures.  Compl., Dkt. No. 5 ¶ 14.

Plaintiffs assert that during the time that they worked for Goals, Defendants required them to work more than ten hours in a single day and more than forty hours per week.  Lawrence Deposition at 66:15–17, 70:14–19; Warner Decl. ¶ 3; Braccia Deposition at 32:17–21, 51:2–14; Rosado Decl. ¶ 4; Blau Decl. Ex. C, Declaration of April Robbins-Bobyn ("Robbins-Bobyn Decl.") ¶¶ 12, 14. Lawrence and Warner recall that they worked at least 45 hours per week.  Lawrence Deposition 66:15-17; Warner Decl. ¶ 3.  Twice per week, Lawrence arrived at the office 15 minutes before her shift started.  Lawrence Deposition at 67:12–68:2.  Warner also worked through her lunch break at least 3 days per week, and Goals deducted time for lunch breaks that Warner did not take.  Warner Decl. ¶¶ 3, 6.  Braccia and Rosado recalled that they worked at least 60 hours per week.  Braccia Deposition at 32:17–21; Rosado Decl. ¶ 4.  They frequently worked at home during

2

the evenings and on weekends.  Braccia Deposition 48:21–49:3; 51:2–14; Rosado Decl. ¶ 4.  Braccia worked through lunch almost daily.  Braccia Deposition at 51:2–14.  Braccia was also required to check out at night and then continue to work at her desk.  Braccia Deposition at 46:14–21.

Plaintiffs state that Defendants failed to pay them overtime for all overtime hours worked. Lawrence Deposition at 30:2–4; 49:15–21; Warner Decl. ¶ 5; Robbins-Bobyn Decl. ¶ 7.  Defendants also required Plaintiffs to work off-of-the-clock, and Plaintiffs did not receive compensation for this time.  Warner Decl. ¶ 6; Robbins-Bobyn Decl. ¶ 7; Rosado Decl. ¶ 5; Braccia Deposition at 46:14– 21.  Defendants forced Plaintiffs to maintain false time records, which understated the number of hours that they worked each week.  Robbins-Bobyn Decl. ¶ 7; Rosado Decl. ¶ 5.  Defendants also manipulated Plaintiffs' time records.  Robbins-Bobyn Decl. ¶¶ 16–18; Rosado Decl. ¶ 5; Braccia Deposition at 35:18–36:8; Warner Decl. ¶ 5.

## B. Procedural History

On September 25, 2018, Plaintiffs filed a hybrid putative class and collective action under the FLSA and the NYLL on behalf of themselves and a purported collective and class of all other similarly situated individuals.  Compl.  The Complaint alleges that Defendants violated the FLSA and NYLL by (i) failing to compensate them for all hours worked each work week; (ii) requiring Plaintiffs to submit false time records that understated the true number of hours that they worked; (iii) failing to properly compensate them for all hours worked in a work week in excess of forty; and (iv) failing to compensate them at a rate of 1.5 times their regular rate of pay for all hours in a workweek in excess of forty.  *Id.* ¶¶ 91–94; 99–103.  Plaintiffs also allege additional violations of the NYLL.

The Court held an initial pre-trial conference on September 18, 2019.  Dkt. No. 43.  The parties began discovery shortly after that conference.  Fact discovery was completed on August 25, 2020.  Dkt. No. 94.  Discovery is now closed.

On October 26, 2020, Plaintiffs filed motions for certification of a collective action pursuant to 29 U.S.C. § 216(b) ("Plaintiffs' FLSA Motion") and certification of a class action pursuant to Fed. R. Civ. P. 23 ("Plaintiffs' Rule 23 Motion").  Dkt. No. 121; Dkt. No. 124.  Defendants filed their opposition to both motions ("Defendants' Opposition") on December 31, 2020.  Dkt. No. 133. Plaintiffs filed their reply ("Plaintiffs' Reply") on January 19, 2021.  Dkt. No. 138.

## III. DISCUSSION

### A. FLSA Collective Action

#### 1. Legal Standard

The FLSA provides that an action for unlawful employment practices may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  "[P]laintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020).  Unlike class actions, FLSA collective actions need not satisfy the requirements of Fed. R. Civ. P. 23, and only plaintiffs who "opt in" by filing consents to join the action are bound by the judgment.  *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013); *see Scott*, 954 F.3d at 518–20 (holding that the requirements of Fed. R. Civ. P. 23 are "unrelated to and more stringent" than the requirements for FLSA collective actions).

The Second Circuit has approved a two-step method to certify FLSA collective actions. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Id.*  Courts may approve sending notice if "plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *Id.* (quoting

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). The factual showing required "should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist," but "unsupported assertions" are not sufficient. *Id.* (quoting *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991 (emphasis in original)); *see also Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) ("[A] plaintiff's burden at this preliminary stage is minimal." (quotations omitted)). "Plaintiffs may satisfy this requirement by relying on 'their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445 (S.D.N.Y. 2013) (quoting *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008)). At this stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).

"This initial burden is limited, in part, because the determination that the parties are similarly situated is merely a preliminary one and may be modified or reversed" at the second stage of the inquiry. *Id.* (quotations omitted). This second stage occurs "after notice is sent, the opt-in period ends, and discovery closes." *Mendoza*, 2013 WL 5211839, at *3. At this point, the district court will have a "fuller record" and can then "determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555.

Although "the standard is higher at this second stage, the 'similarly situated' requirement of 29 U.S.C. § 216(b) is considerably less stringent than the requirement of Fed. R. Civ. P. 23(b)(3) that common questions 'predominate.'" *Alonso v. Uncle Jack's Steakhouse, Inc.*, No. 08 Civ. 7813 (DAB), 2011 WL 4389636, at *3 (S.D.N.Y. Sept. 21, 2011) (citation and internal quotation marks omitted).

"All that is required is a persuasive showing that the original and opt-in plaintiffs were common victims of a FLSA violation pursuant to a systematically-applied company policy or practice such that there exist common questions of law and fact that justify representational litigation." *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002 (DLC), 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010). "The Second Circuit has yet to prescribe a particular method for determining whether members of a class are similarly situated." *Morano v. Intercontinental Cap. Grp., Inc.*, No. 10 CV 02192 (KBF), 2012 WL 2952893, at *5 (S.D.N.Y. July 17, 2012). However, district courts typically review several factors, including (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Id.*; *see also Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9077 (RMB), 2007 WL 646326, at *5 (S.D.N.Y. Feb. 27, 2007).

While "district courts of [the Second] Circuit appear to have have coalesced around [this] two-step method," it is "not required by the terms of the FLSA or the Supreme Court's cases." *Myers*, 624 F.3d at 554–55. The "certification" process for FLSA actions refers to an exercise of judicial discretion "to facilitate the sending of notice to potential class members." *Id.* at 555 n. 10. It is "neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful 'case management' tool for district courts." *Id.* (quoting *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989)).

### 2. Application

Plaintiffs move for certification of an FLSA collective action, relying on the depositions of Sergey Voskin, Kylee Lawrence, Courtney Braccia, and April Robbins-Bobyn, and declarations of Robbins-Bobyn, Bria Warner, and Wendy Rosado. Dkt. Nos. 126-1–8. Plaintiffs seek certification of a collective comprised of "all current and former receptionists and patient coordinators employed by Goals and/or predecessor companies, who during the period of September 25, 2015 to present

were not paid overtime compensation for all hours in a workweek in excess of 40." Pls.' FSLA Motion at 1. For the reasons that follow, the Court will certify the collective with some modifications.

Plaintiffs also seek court-facilitated notice of this action and the Court's approval of their proposed notice and consent form. Plaintiffs ask the Court to order posting of the notice and consent forms in Defendants' offices and to authorize the dissemination of these documents to members of the proposed collective. To facilitate the process, Plaintiffs seek the production of all available contact information, including telephone numbers and email addresses, for all individuals within the definition of the proposed collective. *See* Dkt. No. 122.

As Defendants point out, the proceedings in this case do not mirror the now typical two-stage process described in *Myers*. Plaintiffs moved for certification of a collective action for the first time after discovery had already been conducted, skipping the first step of conditional certification endorsed in *Myers*. Accordingly, Defendants have not moved to decertify the not-yet-existent collective and, instead, oppose certification of the collective. Contrary to Defendants' assertion, however, Plaintiffs' failure to explicitly seek conditional certification is not a "procedural defect which limits their rights to send out any notices at this point." Defs.' Opp'n at 20. The two-step certification process is not required; it is "neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful 'case management' tool for district courts." *Myers*, 624 F.3d at 555 n.10.

Plaintiffs must demonstrate that members of the collective are "similarly situated" in order to qualify for collective action treatment. 29 U.S.C. § 216(b). "Whether the second stage heightened scrutiny automatically applies where discovery has closed is open to debate." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 481 (S.D.N.Y. 2016) (quoting *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 123 (S.D.N.Y. 2011). But "courts have either applied, or expressly remained open to applying,

second-stage scrutiny in the first instance when discovery has been completed." *Id.*; *see also Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 WL 2819730, at *9–10 (S.D.N.Y. Sept. 29, 2006) (applying heightened scrutiny when conditional certification was sought following discovery); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 482 (E.D. Cal. 2006) ("Where discovery is complete, courts sometimes bypass the first tier in favor of immediately making the second-tier factual determination.").

Here, the parties have completed discovery. Accordingly, the Court will apply heightened scrutiny. Having evaluated the parties' submissions, the Court concludes, for the reasons explained below, that Plaintiffs have demonstrated that they are similarly situated to other receptionists and patient coordinators employed by Goals. But Plaintiffs have failed to establish that Plaintiffs are similarly situated to receptionists and patient coordinators employed by predecessors of Goals.

### a.  Plaintiffs Are Similarly Situated to Other Goals Employees

The declarations and deposition testimony submitted in support of Plaintiffs' motion show that Plaintiffs and 50 patient coordinators and 20–30 receptionists employed by Goals were subject to the same employment practices that, Plaintiffs allege, violate the FLSA. Robbins-Bobyn Decl. ¶¶ 8, 9; Voskin Deposition at 18:16–19, 18:20–19:6. Each Plaintiff states that she worked more 40 hours a week and did not receive all of the overtime pay owed to her. Lawrence Deposition at 66:15–17; Warner Decl. ¶ 3; Braccia Deposition at 32:17–21; Rosado Decl. ¶ 7. Plaintiffs, through their statements on the record, provide evidence that suggests that they would come in early, stay late, work through lunch, and continue working at home after leaving the office and on weekends. Lawrence Deposition at 66:18–67:7, 67:12–68:2; Warner Decl. ¶ 3; Braccia Deposition at 46:14–21, 48:21–49:3, 51:2–11; Rosado Decl. ¶ 4. Plaintiffs also contend that Defendants' time-keeping equipment was inaccurate and that their records were manipulated. Warner Decl. ¶¶ 4–5; Braccia Deposition at 35:18–36:8; Rosado Decl. ¶¶ 5–6. Plaintiffs supplement their own recollections with

the declaration and deposition of a third-party witness who was a human resources consultant for Goals, April Robbins-Bobyn.  Ms. Robbins-Bobyn corroborates these claims and states that patient coordinators and receptionists were all subject to these same policies and practices.  Robbins-Bobyn Decl. ¶¶ 12, 14–18.  Plaintiffs have not presented any evidence that they are similarly situated to receptionists and patient coordinators employed by predecessors of Goals.  Accordingly, the Court will modify the proposed collective to consist of "all current and former receptionists and patient coordinators employed by Goals" during the relevant time period.

With respect to the declarations and exhibits submitted by Defendants in opposition to Plaintiff's motion—which Defendants claim undermine Plaintiffs' claims regarding uncompensated overtime hours and Defendants' timekeeping policies—these do not undermine Plaintiffs' showing, which supports the conclusion that they have met the requirements for certification of the collective. Defendants do not claim that Lawrence, Warner, Braccia, or Rosado were subject to different policies or practices regarding time records or overtime compensation than other receptionists or patient coordinators.  Rather, Defendants attack the credibility of named Plaintiffs and Ms. Robbins-Bobyn and point to Plaintiffs' lack of documentary evidence regarding their overtime hours.  *See, e.g.*, Defs.' Opp'n at 8.  But Plaintiffs are not required to produce such records.  When employees dispute whether an employer's records are inaccurate or inadequate, and Plaintiffs do here, employees need only present "sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).  Plaintiffs need not "demonstrate exactly how much off-the-clock work was performed with [Defendants'] knowledge."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 365 (2d Cir. 2011) (quotations omitted).

### b.  Defenses Available to Defendants

Defendants do not contend that individual defenses are necessary to resolve Plaintiffs'
claims.

### c.  Fairness and Procedural Considerations

The FLSA is a remedial statute; thus, federal courts should give it "a liberal construction."
*See Braunstein v. E. Photographic Lab'ys.*, 600 F.2d 335, 336 (2d Cir.1978).  The Supreme Court has held
that a FLSA collective action allows plaintiffs to take "advantage of lower individual costs to
vindicate rights by the pooling of resources," and allows the judicial system to benefit by "efficient
resolution in one proceeding of common issues of law and fact arising from the same alleged
[violation]." *Hoffmann–La Roche*, 493 U.S. at 170; *see also Gayle v. Harry's Nurses Registry, Inc.*, No. 07
Civ. 4672 (NGG) (MDG), 2012 WL 686860, at *6 (E.D.N.Y. Mar. 2, 2012) ("Certification is favored
where a collective action would lower costs to the [p]laintiffs by pooling resources, efficiently
resolving common issues of law and fact, and coherently managing the class in a manner that will
not prejudice any party.").  Litigating overtime claims for each of the named Plaintiffs would be
more burdensome on Plaintiffs, Defendants, and the courts than litigating these claims collectively;
this burden would be even greater if additional receptionists and patient coordinators join the
collective.  As a result, both fairness and procedural considerations weigh in favor of certifying the
collective.

### d.  Notice Period

Plaintiffs propose that the time period for the collective run from September 2015 to the
present. Dkt. No. 122 at 1.  The FLSA has a two-year statute of limitations except in the case of
willful violations, for which the statute of limitations is three years.  *See* 29 U.S.C. § 255(a).  The
Second Circuit has explained that "a violation is willful for purposes of the FLSA limitations
provision only if the employer knowingly violates or shows reckless disregard for the provisions of

the Act." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2d Cir. 1988).  Here, Plaintiffs have made

allegations that Defendants willfully violated the FLSA by requiring employees to work additional

hours and manipulating time-keeping equipment.  Plaintiffs have not at any point in this litigation

requested that the statute of limitations be tolled.  Accordingly, the appropriate start date for the

collective period is three years prior to the date of filing of this motion for collective certification.

*See Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010).[1]  Accordingly, the

proposed collective is redefined to consist of all current and former receptionists and patient

coordinators employed by Goals during the period of October 26, 2017 to October 26, 2020.

## B.  Rule 23 Class Certification

### 1.  Legal Standard

"A plaintiff seeking certification of a Rule 23(b)(3) class action bears the burden of satisfying

the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of

representation—as well as Rule 23(b)(3)'s requirements:  (1) that 'the questions of law or fact

common to class members predominate over any questions affecting only individual members (the

'predominance' requirement); and (2) that 'a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy' (the 'superiority' requirement)."  *In re Petrobras Sec.*,

862 F.3d 250, 260 (2d Cir. 2017) (quoting Fed. R. Civ. P. 23(a) and (b)(3)); *see also In re U.S.*

*Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (a party seeking class certification under

Rule 23(b)(3) "must establish that the four threshold requirements of Rule 23(a) . . . are satisfied"

and must also show that Rule 23(b)(3)'s "predominance" and "superiority" requirements are

satisfied).  In addition to the express requirements of Rule 23, the Second Circuit has recognized an

---

[1] There is good reason why many plaintiffs' counsel pursue the conditional certification process outlined in *Myers*. Conditional certification should normally be decided "early in the litigation process, so that class members' claims do not become time-barred."  *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013).  Plaintiffs chose not to seek conditional certification.  And more than two years have passed since the date on which the Complaint was filed— September 25, 2018—and the date on which Plaintiffs' FLSA Motion was filed—October 26, 2020.

implied requirement that the class be ascertainable, that is, "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras*, 862 F.3d at 264. The absence of a "defined class period or temporal limitation" may make the class insufficiently definite, so class definitions should ordinarily have temporal limitations. *Brecher v. Republic of Arg.*, 806 F.3d 22, 25 (2d Cir. 2015); *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, No. 1:14 Civ. 6502 (GHW), 2017 WL 3835339, at *3 (S.D.N.Y. Aug. 30, 2017).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *see also In re Am. Int'l. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237–38 (2d Cir. 2012) ("The party seeking class certification must affirmatively demonstrate . . . compliance with the Rule, and a district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met." (internal quotation marks and citation omitted)). "The ultimate question is not whether the plaintiffs have stated a cause of action or will prevail on the merits but whether they have met the requirements of Rule 23." *Gortat v. Capala Bros.*, 257 F.R.D. 353, 362 (E.D.N.Y. 2009) (citing *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)).

A proposed class also should not be certified if it creates a "fail-safe" class. *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012). "A fail-safe class is one whose definition 'shields the putative class members from receiving an adverse judgment . . . .'" *Id.* (quoting *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)). Thus, "in a fail-safe class, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment." *Id.* Courts should not certify a proposed "fail-safe" class because they are "unfair to defendants," "prevent[ ] an adverse judgment being entered against plaintiffs," and are

"unmanageable because the members of the class could only be known after a determination of liability." *Id.*; *see Ruiz v. Citibank*, N.A., No. 10 Civ. 5950 (KPF) (RLE), 2015 WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015) (explaining that "fail-safe" classes are disfavored, in part, because they "require an adjudication of the merits of each individual's claim to determine whether they are within the class, squandering whatever efficiency gains might be had from mass litigation").  "A fail-safe class is usually defined in terms of a 'legal injury,' sometimes by reference to a particular statute, regulation, or contract that has been allegedly violated or breached.  A class defined in this fashion 'begs the very legal question at issue in [the] case' and is 'unworkable' because 'the class definition depends upon a legal determination that has not yet been made[,]' and it is hard to understand 'how anyone, let alone these particular proposed class members, can know whether they fall within this class.'" *Gregory v. Stewart's Shops Corp.*, No. 7:14 Civ. 33 (TJM) (ATB), 2016 WL 8290648, at *18 (N.D.N.Y. July 8, 2016) (internal citations omitted).

"Despite a fail-safe class definition, courts have the discretion 'to construe the complaint or redefine the class to bring it within the scope of Rule 23.'" *Mazzei*, 288 F.R.D. at 55 (quoting *Cokely v. N.Y. Convention Ctr. Operating Corp.*, No. 00 Civ. 4637 (CBM), 2004 WL 1152531, at *2 n.3 (S.D.N.Y. May 21, 2004)).  Indeed, "[i]t is well-established that 'the court may, in its discretion . . . modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies.  In fact, the court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision." *Rivera v. Harvest Bakery, Inc.*, 312 F.R.D. 254, 267 (E.D.N.Y. 2016) (quoting *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 114 (E.D.N.Y. 2011)).

### 2.  Application

Plaintiffs move for certification of a class action, pursuant to Fed. R. Civ. P. 23, for their claims under NYLL that they were not paid overtime for all hours worked in a workweek in excess of forty.  Plaintiffs define the proposed class as

> All current and former employee receptionists and patient coordinators of Goals and/or predecessor companies, who during the period of September 25, 2015 to present, were not paid overtime compensation at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40.

Dkt. No. 125 at 6.  For the reasons that follow, the Court will certify the proposed class with some modifications.

### a.  Fail-Safe Class

Here, the Court finds that Plaintiffs' proposed class represents a "fail-safe" and will not certify it as defined.  Plaintiffs' proposed class would only have members if Plaintiffs were to prevail on their compensation claims under the NYLL.  The proposed class would be comprised of those employees who "were not paid overtime compensation at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of forty."  Dkt. No. 125 at 6.  Anyone who was paid overtime compensation for all hours worked in a workweek in excess of forty would not be a part of the class, and accordingly, would not be bound by an adverse judgment.  Certifying Plaintiffs' proposed class would permit Plaintiffs to litigate without risking an adverse judgment, given that putative class members either "win and are in the class, which by definition cannot lose its claim," or they "lose and are outside the class, and thus are not bound by an adverse action."  *See Ruiz*, 2015 WL 4629444, at *7 (internal quotations omitted).

Accordingly, the Court will remove the phrase "who . . . were not paid overtime compensation at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40" from the proposed class definition.  Dkt. No. 125 at 6.  The Court next considers whether the modified class set forth above should be certified pursuant to Rules 23(a) and (b)(3).

### b. Numerosity

To satisfy Rule 23(a)(1)'s numerosity requirement, Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this Circuit, numerosity is presumed when the putative class has at least forty members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Though Plaintiffs are not required to present a precise calculation of the number of class members, they must show some evidence that provides the Court with a reasonable estimate. *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004). Here, Defendant testified that from 2016 to present, Goals has employed approximately fifty (50) patient coordinators and 20–30 receptionists. Voskin Deposition at 18:16–19, 18:20–19:6. Accordingly, including only receptionists and patient coordinators of Goals (and not including receptionists and patient coordinators of predecessor companies), the class would have 70–80 members. This satisfies the numerosity requirement.

Defendants have challenged whether Plaintiffs have met the numerosity requirement because Plaintiffs do not "have any evidence that there are at least 40 receptionists who were not paid all of their overtime or that there are at least 40 patient coordinators who have not been, either." Defs.' Opp'n at 18. The Court has removed the fail-safe language from the class definition. While the Court has the power to divide a class into subclasses, the Court will not treat patient coordinators and receptionists as two subclasses because, based on evidence before the Court, Plaintiffs in those roles do not have divergent interests and raise similar claims of unpaid overtime and false time records. *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").

### c. Commonality

Plaintiffs must also show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A question of law or fact is common to the class if the question is "capable

15

of classwide resolution—which means that its truth or falsity will resolve an issue that is central to

the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. "The

claims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires

that there be issues whose resolution will affect all or a significant number of the putative class

members." *Johnson*, 780 F.3d at 137 (citing Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:7

(11th ed. 2014)). "In wage cases, the commonality requirement is usually satisfied where the

plaintiffs allege that defendants had a common policy or practice of unlawful labor practices."

*Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323 (ALC) (AJP), 2013 WL 1040052, at *15 (S.D.N.Y.

Mar. 15, 2013), report and recommendation adopted No. 12 Civ. 6323 (ALC) (AJP), 2013 WL

2473039 (S.D.N.Y. June 7, 2013) (citing *Poplawski v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765,

2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012)).

Here, Plaintiffs have not established commonality among members of the proposed class of

"receptionists and patient coordinators of Goals and/or predecessor companies." Dkt. No. 125 at

1. As discussed above, Plaintiffs have not provided any evidence that former employees of any

predecessor companies to Goals suffered the same injury as current and former employees of Goals.

Predecessor companies are also not named as defendants in this action, and Plaintiffs do not argue

that Goals bears any successor liability for any similar practices at predecessor companies. So

Plaintiffs have not shown that the proposed class, as currently defined, meets the commonality

requirement because there is no evidence relating to predecessor companies.

But Plaintiffs have established commonality among "receptionists and patient coordinators

of Goals" in a variety of ways. Each Plaintiff states that she worked more than forty hours in a

workweek and did not receive all of the overtime pay owed to her. Lawrence Deposition at 66:15–

17; Warner Decl. ¶ 3; Braccia Deposition at 32:17–21; Rosado Decl. ¶ 7. Plaintiffs, through their

statements on the record, provide evidence that suggests that they would come in early, stay late,

work through lunch, and continue working at home after leaving the office and on weekends.
Lawrence Deposition at 66:18–67:7, 67:12–68:2; Warner Decl. ¶ 3; Braccia Deposition at 46:14–21,
48:21–49:3, 51:2–11; Rosado Decl. ¶ 4.  Plaintiffs also contend that the Defendants' time-keeping
equipment was inaccurate and that the time records were manipulated.  Warner Decl. ¶¶ 4–5;
Braccia Deposition at 35:18–36:8; Rosado Decl. ¶¶ 5–6.  A former human resources consultant, Ms.
Robbins-Bobyn, corroborates these claims and states that patient coordinators and receptionists
were all subject to these same policies and practices.  Robbins-Bobyn Decl. ¶¶ 12, 14–18.
Accordingly, a common question arises regarding whether the NYLL was violated by Defendants'
alleged pay practices.  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011)
(finding commonality satisfied "since the Plaintiffs' NYLL class claims all derive from the same
compensation policies" and "all of the class plaintiffs' claims arise under the same New York State
statutes and regulations").  Indeed, Defendants do not raise any arguments that Plaintiffs have not
met the commonality requirement.

### d.  Typicality

Pursuant to Rule 23(a)(3), Plaintiffs must show that the "claims or defenses of the
representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).
Typicality "is satisfied when each class member's claim arises from the same course of events, and
each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v.
Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285,
291 (2d Cir. 1992)); *see also Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 654 (S.D.N.Y. 2013) (finding
typicality satisfied where the representative plaintiff's claims were "clearly based on the same legal
theory and arise from the same practice or course of conduct as the other class members") (quoting
*In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998) (internal quotation marks
omitted)).  While the class representatives' claims need not be identical for typicality to be satisfied,

"plaintiff's claim and the class claims must be so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008) (citing *Marisol*, 126 F.3d at 376) (internal quotation marks and punctuation omitted).

In the Second Circuit, analysis of Rule 23(a)(3)'s typicality requirement often converges with that of commonality. *See Marisol*, 126 F.3d at 376 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13, 102 (1982)). Here, for substantially the same reasons discussed above in connection with the commonality requirement, the proposed class representatives' claims and defenses are typical of the claims of absent class members. The proposed class representatives all worked as receptionists or patient coordinators during the class period. The representatives' claims against Defendants, like the claims of the absent class members, arise out Defendants' policies and course of conduct regarding how receptionists and patient coordinators were paid. Furthermore, all of the proposed class representatives contend that Defendants failed to pay all overtime compensation owed. Lawrence Deposition at 66:15–17; Warner Decl. ¶ 3; Braccia Deposition at 32:17–21; Rosado Decl. ¶ 7. Defendants do not argue that Plaintiffs fail to meet the typicality requirement. The typicality requirement is satisfied here.

### e. Adequacy

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation is evaluated in two ways: (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (citing *Flores v. Anjost Corp.*, 284 F.R.D. 112, 128–29 (S.D.N.Y. 2012)). With respect to the latter, to satisfy Rule 23(a)(4), "the named plaintiffs must possess the same interests and suffer the same injuries as the class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011)

(quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (internal punctuation omitted)). "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). In evaluating this requirement, courts consider whether the class representatives are familiar with the action and "whether they are of sufficient moral character to represent a class." *Espinoza*, 280 F.R.D. at 124. Further, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," certification of the class is not appropriate because the representative cannot act in the best interest of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (internal citation and quotation marks omitted).

The Court is satisfied that the attorneys of the Blau Leonard Law Group, LLC have the requisite experience and qualifications to represent the class. Blau Leonard Law Group has significant experience in wage and hour litigation, and has acted as lead or class counsel in many class and collective actions in federal court. Declaration of Steven Blau, Dkt. No. 126 ¶¶ 5–9. Defendants do not challenge the adequacy of Plaintiffs' counsel. In light of Plaintiffs' counsel's experience and the discrete nature of the issues raised in this case, the Court finds that counsel can adequately represent the class in this case.

The Court also finds that the class representatives satisfy the adequacy requirement. The class representatives worked as either receptionists or patient coordinators and were subject to the same policies and practices regarding overtime compensation as class members. All have substantially the same claims against Defendants—that they were not paid for all of the work they did for Goals. *See, e.g.*, Lawrence Deposition at 66:15–17; Warner Decl. ¶ 3; Braccia Deposition at 32:17–21; Rosado Decl. ¶ 7. Because they share their claims with absent class members, the Court concludes that these representatives are capable of vigorously pursuing the claims of the class. *See*

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.").  In addition, all class representatives have either sat for depositions or submitted declarations in support of the motion for class certification, indicating they are familiar with the case and are actively pursuing their claims.

Defendants challenge the adequacy of the class representatives, arguing that because "named Plaintiffs have no knowledge of the underlying allegations as it may apply to anyone else" and because Plaintiffs rely on the testimony of third-party Robbins-Bobyn in support of the underlying allegations as they relate to other class members.  Defs.' Opp'n at 19.  Defendants contend that thus, "as proposed by Plaintiffs, the real class representatives would be Plaintiffs' counsel and Ms. Robbins-Bobyn."  *Id.*  But there is no requirement that a class representative have personal knowledge of all class members' claims.  Counsel's argument misapprehends the role of a class representative.  And Defendants do not argue that the named Plaintiffs did not work as receptionists or patient coordinators, or that they were subject to different policies and practices regarding compensation and overtime, or that they have any conflict of interest relating to the subject matter of the litigation.

### f.  Predominance

In addition to the four prerequisites of Rule 23(a), Plaintiffs must also satisfy the requirements of Rule 23(b)(3), the first of which is that "the questions of law or fact common to the class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  As such, the requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class

member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers*, 624 F.3d at 547 (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). Although "commonality, typicality, and predominance overlap," *Wynn v. N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016), predominance is "even more demanding" than the Rule 23(a) requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34, (2013). Thus, courts are required "to take a 'close look' at whether common questions predominate over individual ones." *Id.* (quoting *Amchem*, 521 U.S. at 615).

Here, the class's common questions predominate over any individual ones because each potential class member was subject to the same policies as her fellow class members and "substantial elements of [the] claims against [Defendants] may be established by generalized, rather than individualized, proof." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010). Defendants do not argue that Plaintiffs are unable to meet the predominance requirement.

Where plaintiffs' claims arise from a common policy by Defendants and rely on a common legal theory, the predominance requirement is satisfied because "the need for individualized determinations of the putative class members' damages does not, without more, preclude class certifications." *Romero v. La Revise Assocs., LLC*, 58 F.Supp.3d 411, 419 (S.D.N.Y. 2014) (quoting *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 382 (S.D.N.Y. 1996)). Whether Defendants maintained policies of failing to compensate Plaintiffs for all overtime hours worked are questions common for all members of the class and predominate over any individual damages assessments. The question of whether Defendants employed an illegal policy or practice with respect to this group of employees can be addressed by class-wide proof regarding Defendants' payroll records, financial records, and testimony. And courts in this District have found that the types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to

which each plaintiff might be entitled, "[are] inevitable and do[ ] not defeat the predominance requirement." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (holding that questions of liability concerning whether class members were supposed to be paid the minimum wage and for overtime "are about the most perfect questions for class treatment"); *see also Espinoza*, 280 F.R.D. at 128 ("Courts have often found the predominance requirement satisfied despite individual differences in the amount of damages."). Accordingly, the predominance requirement is satisfied here.

### g. Superiority

In addition, the proposed class action must satisfy the second prong of Rule 23(b)(3), which requires a court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In analyzing this requirement, the court must consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.* Together, the predominance and superiority requirements were designed to "cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'" *Amchem*, 521 U.S. at 615 (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., p. 697).

Plaintiffs have met the superiority requirement here. It is unlikely that the class members would engage in individual action because the amount of potential recovery is low and is likely to be outweighed by the individual cost of litigation. Courts in this District have consistently held that "a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many

potential class members are currently employed by the defendants." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014); *see, e.g.*, *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116 (RWS), 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007) (finding class action litigation to be superior where the average claim was $560 and some class members currently worked for the defendant); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (finding the superiority requirement was met where litigation costs were likely to exceed any recovery and some class members were still employed with the defendants).

### h.  Ascertainability

Finally, there is an implied requirement that the class be sufficiently ascertainable. *In re Petrobras*, 862 F.3d at 269. As the Second Circuit recently explained, ascertainability is a "modest threshold requirement" that precludes certification only if a "proposed class definition is indeterminate in some fundamental way." *Id.* "That is, a class must be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member'; a class must be 'defined by objective criteria' so that it will not be necessary to hold 'a mini-hearing on the merits of each case.'" *Id.* at 266–67 (citations omitted) (emphasis in original).

In employment matters such as this one, courts in this District have found that a class is ascertainable where its members can be determined using objective documentation, such as Defendants' employment records. *See, e.g.*, *Flores*, 284 F.R.D. at 123; *Gucciardo v. Titanium Constr. Servs., Inc.*, No. 16 Civ. 1113 (LGS), 2017 WL 3738777, at *6 (S.D.N.Y. Aug. 30, 2017); *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 Civ. 5124 (AT), 2015 WL 5813382, at *5 (S.D.N.Y. Sept. 28, 2015); *Spencer*,  2013 WL 1040052 at *24. However, the objective criteria must be sufficiently specific as to "establish the definite boundaries of a readily identifiable class." *Brecher*, 806 F.3d at 25 (holding that plaintiffs failed to meet the ascertainability requirement where the objective criteria used ("owning a beneficial interest in a bond series") was broad and placed no limit on time or context).

23

This requirement is satisfied for Plaintiffs' proposed class, as modified above, of receptionists and patient coordinators employed by Goals, with one additional modification. Plaintiffs' proposed endpoint—"to present"—is an indefinite boundary. Dkt. No. 125 at 6. It is not apparent whether Plaintiffs intend to refer to the date on which the complaint was filed, the date of their motion for class certification, the date of an opinion on the motion, the end of a notice period, or the date of final disposition of this case. There must be an end date to the class period using objective criteria so that members cannot continue to be added throughout the process of litigation. The Court will modify the endpoint to be the date Plaintiffs filed their motion for class certification: October 26, 2020.

## V. CONCLUSION

For the reasons stated above, Plaintiffs' FLSA Motion is GRANTED in part and Plaintiffs' Rule 23 Motion is GRANTED in part, with the following modifications to the proposed class and collective.

Plaintiffs are granted certification for a collective consisting of all current and former receptionists and patient coordinators employed by NYC Medical Practice, P.C. d/b/a Goals Aesthetics and Plastic Surgery, from October 26, 2017, to October 26, 2020. Defendants are directed to provide to Plaintiffs, within ten (10) days, the names, addresses, phone numbers, email addresses, dates of employment, and job positions/titles for all individuals within the definition of the FLSA collective action, in a readable digital form. The form and content of the Notice of Lawsuit with Opportunity to Join must be revised to conform with this Order. The parties are directed to meet and confer regarding revisions to Plaintiffs' proposed notice and consent forms and, if possible, to submit mutually acceptable revised forms to the Court within seven (7) days of the date of this Order. If the parties cannot reach agreement regarding the content of the notice and consent forms, they should instead submit their respective proposals, together with a joint letter

describing the differences between their proposals, within the same time period.  Plaintiffs are directed, within fourteen (14) days following Defendants' disclosure of the collective contact information, to distribute and transmit the Notice of Lawsuit with Opportunity to Join and Consent to Sue to all individuals within the definition of the FLSA collective action, by first class U.S. Mail and electronically by personal and business email.  The Court approves and sets a sixty (60) day period, to begin on the date that the Notice of Lawsuit with Opportunity to Join and Consent to Sue is first sent, for each individual within the definition of the FLSA collective action, to opt in to the case.

Plaintiffs' are also granted certification for a class consisting of all current and former receptionists and patient coordinators employed by NYC Medical Practice, P.C. d/b/a Goals Aesthetics and Plastic Surgery, from 2015 to October 26, 2020.

Plaintiffs are hereby designated to serve as the representative of the class and of the collective members who opt into the case.  Plaintiffs' counsel are approved to serve as attorneys of the class and of collective members who opt into the case.

SO ORDERED.

Dated:  May 20, 2021
New York, New York

_____
GREGORY H. WOODS
United States District Judge