UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
                                                     :

KEYLEE LAWRENCE, COURTNEY          :
BRACCIA, BRIA WARNER, and WENDY    :
ROSADO, individually and on behalf of all others :
similarly situated,                           :

                                             :

                              Plaintiffs, :

                                             :

                       -against-                 :

                                             :

NYC MEDICAL PRACTICE, P.C. d/b/a Goals :
Aesthetics and Plastic Surgery, and SERGEY :
VOSKIN, M.D.,                               :

                                             :

                            Defendants.:

                                             :

-------------------------------------------------------------- X

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: _____ | |
| DATE FILED: 1/26/2024 | |

1:18-cv-8649-GHW

<u>MEMORANDUM OPINION
AND ORDER</u>

GREGORY H. WOODS, District Judge:

## I. INTRODUCTION

       In 2018, four employees of a New York plastic surgery practice filed suit against their

employer, alleging that it had violated various provisions of the Fair Labor Standards Act (the

"FLSA") and the New York Labor Law (the "NYLL").  In 2021, the Court certified a collective

action with respect to the employees' FLSA claims and a F.R.C.P. Rule 23(b) class with respect to

their NYLL claims.  Defendants now move to decertify the Rule 23(b) class, claiming that discovery

revealed significant differences among class members.  Most significantly, Defendants contend, a

subset of class members were salaried employees and arguably exempt from overtime requirements.

The Court agrees that common issues do not predominate among the class as originally certified.

However, because excluding those salaried employees from the class corrects the problem, the

Court concludes that the class should be modestly modified, rather than decertified.

## II. BACKGROUND

### A. Parties

In 2018, Keylee Lawrence, Courtney Braccia, Bria Warner, and Wendy Rosado worked for NYC Medical Practice P.C.  Dkt. No. 240 ("Opposition"), Ex. A ("Lawrence Deposition"), at 23:25–24:2; Ex. B ("Warner Decl.") ¶ 2; Ex. C ("Braccia Deposition") at 17:22–25; Ex. D ("Rosado Decl.") ¶ 2.  NYC Medical Practice P.C. conducts business under the name Goals Aesthetics and Plastic Surgery ("Goals").  Dkt. No. 76-6 ("Voskin Deposition"), at 10:15–21.  Goals' sole shareholder is physician Sergey Voskin.  *Id.* at 11:17–23.  Ms. Lawrence and Ms. Warner worked as receptionists.  Lawrence Deposition at 23:14–18; Warner Decl. ¶ 2.  Ms. Braccia and Ms. Rosado were patient coordinators.  Braccia Deposition at 21:11–13; Rosado Decl. ¶ 2.  Goals is in the business of performing cosmetic plastic surgery, body contouring, anti-aging techniques, facial rejuvenation processes, and other aesthetic procedures.  Dkt. No. 5 ("Compl.") ¶ 14.

Most Goals patient coordinators and receptionists received an hourly wage ranging from $14 to $20.  Dkt. No. 235 ("Voskin Decl."), Ex. A ("Employee Pay Methods").  Others, including Ms. Rosado and Ms. Braccia, received a salary instead of an hourly wage.  *Id.*  Salaried employees held a variety of roles, but most were patient coordinators.  *Id.*  Some of them, including Ms. Rosado and Ms. Braccia, were categorized in the payroll system as exempt from the FLSA's and NYLL's overtime requirements.  Dkt. No. 236 ("Lurie Decl.") ¶ 14.

Plaintiffs assert that during the time that they worked for Goals, Defendants required them to work more than ten hours on some days and more than forty hours most weeks.  Lawrence Deposition at 66:15–17, 70:14–19; Warner Decl. ¶ 3; Braccia Deposition at 32:17–21, 51:2–14; Rosado Decl. ¶ 4; Opposition Ex. E, ("Robbins-Bobyn Decl.") ¶¶ 12, 14.[1]  Ms. Lawrence and Ms.

---

[1] Defendants argue that the Court should disregard the Robbins-Bobyn Declaration as a "sham."  Reply at 4.  This argument is not persuasive.  Defendants point to several facts in support of their argument:  Ms. Robbins-Bobyn's admission during her deposition that she could not produce specific examples of employees being denied overtime, the

Warner recall that they worked at least 45 hours per week.  Lawrence Deposition at 66:15–17;

Warner Decl. ¶ 3.  Ms. Braccia and Ms. Rosado recall that they worked at least 60 hours per week.

Braccia Deposition at 32:17–21; Rosado Decl. ¶ 4.

Plaintiffs also assert that they frequently worked off-the-clock, and that Goals supervisors

alternatively instructed them not to clock in before beginning work or to continue working after

clocking out.  Warner Decl. ¶ 6; Robbins-Bobyn Decl. ¶ 7; Braccia Deposition at 46:14–21.

Lawrence Deposition at 31:11–18.  Ms. Lawrence alleges that she arrived at the office 15 minutes

before her shift started twice per week.  Lawrence Deposition at 67:12–68:2.  Ms. Warner asserts

that she worked through her lunch break at least 3 days per week and that Defendants deducted

time from her timesheets for lunch breaks that she did not take.  Warner Decl. ¶¶ 3, 6.  Ms. Braccia

and Ms. Rosado assert that they worked at home during the evenings and on weekends.  Braccia

Deposition at 48:21–49:3; 51:2–14; Rosado Decl. ¶ 4.  Ms. Braccia worked through lunch almost

every day.  Braccia Deposition at 51:2–14.  Ms. Braccia was also required to check out at night and

then continue to work at her desk.  Braccia Deposition at 46:14–21.

---

fact that the job description outlined in Ms. Robbins-Bobyn's consulting agreement does not contemplate her involvement in payroll functions, and the fact that the consulting agreement calls her a "consultant" for Goals while her declaration states that she was an employee.  Reply at 4–5.  First, the sham affidavit doctrine does not apply to the affidavit presented by Ms. Robbins-Bobyn.  This doctrine "prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony."  *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) (citing *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013)).  But it "does not mandate that the court disregard a non-party witness's subsequent testimony when it conflicts with the non-party witness's prior statement."  *Id.* at 201.  Ms. Robbins-Bobyn is not a party to this action.  Moreover, Defendants have not identified specific conflicts between Ms. Robbins-Bobyn's testimony and her affidavit.  They merely assert that her consulting agreement, which is not a sworn document, outlines different duties than she asserts she ultimately performed for Goals, and that she was unable to recall certain specific facts that would support the assertions in her declaration.  Defendants also claim that Ms. Robbins-Bobyns lacks personal knowledge of the topics in her affidavit and that "the actual deposition testimony of Ms. Bobyn's provides that she knew nothing about [Goals' policies] other than hearsay testimony from alleged employees of Defendants."  Reply at 5.  But Ms. Robbins-Bobyn asserts in her deposition that her job involved scheduling employees and handling employee complaints, that employees clocked in with her, and that she personally observed the number of hours employees worked because she was in the office.  Robbins-Bobyn Deposition at 67:17–68:2; 85:3–15; 86:14–21; 109:13–22.  She also points to statements by Defendants' employee Ella Voskin regarding Defendants' policies and practices that, while hearsay, fall within the party-opponent exception.  *Id.* at 73:17–21; 104:17–21.  While the Court appreciates that these alleged inconsistencies may persuade a finder of fact to discount some of her statements, the Court need not disregard the affidavit in its entirety.

Plaintiffs contend that Defendants forced them to maintain false time records, which understated the number of hours that they worked each week.  Robbins-Bobyn Decl. ¶ 7; Rosado Decl. ¶ 5; Warner Decl. ¶ 5; Braccia Deposition at 35:18–36:8; Lawrence Deposition at 30:2–4. Plaintiffs also assert that Defendants' manipulated employee time records.  Robbins-Bobyn Decl. ¶¶ 16–18; Rosado Decl. ¶ 5; Braccia Deposition at 35:18–36:8; Warner Decl. ¶ 5; Lawrence Deposition at 21:3–5.  Plaintiffs allege that as a result, they did not receive wages or overtime pay for all hours worked.  Lawrence Deposition at 30:2–4; 49:15–21; Warner Decl. ¶ 6; Robbins-Bobyn Decl. ¶ 7; Rosado Decl. ¶ 7; Braccia Deposition at 36:13–23.

**B.  Procedural History**

On September 25, 2018, Plaintiffs filed a hybrid putative class and collective action under the FLSA and the NYLL on behalf of themselves and a purported collective and class of all other similarly situated individuals.  Compl.  The parties completed discovery on August 25, 2020.  Dkt. No. 94.  Discovery was not bifurcated; as a result the parties were expected to conduct both class and merits discovery during that period.  On May 20, 2021, Court certified both an FLSA collective action and a Rule 23 class, the latter of which (the "Original Class") was defined as:

> All current and former employee receptionists and patient coordinators of Goals
> who during the period of September 25, 2015 to October 26, 2020, were not paid
> overtime compensation at a rate of 1.5 times their regular rate of pay, for all hours in
> a workweek in excess of 40.

Even though the parties had a complete opportunity to conduct discovery prior to class certification, the Court reopened fact discovery to permit Defendant to take additional discovery regarding the members of the class.  Dkt. No. 189.  The extended class discovery period ended on June 8, 2022.  *Id.*  On September 1, 2023, Defendants moved to decertify the class, arguing that differences among class members, particularly differences in payment structure, rendered certification inappropriate.  Dkt. No. 234 ("Motion to Decertify").  On October 9, 2023, Plaintiffs

4

submitted their opposition.  Opposition.  On October 30, 2023, Defendants submitted their reply. Dkt. No. 245 ("Reply").

## III. DISCUSSION

### A. Legal Standard

After certifying a class, "[t]he district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (quotations omitted).  "[A] district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." *Id.* (quoting *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982)).  "In opposing [a] decertification motion," as in the original class certification analysis, plaintiffs "retain[] the burden to demonstrate that [the Rule 23] requirements were satisfied." *Id.* at 270.

"A plaintiff seeking certification of a Rule 23(b)(3) class action bears the burden of satisfying the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as Rule 23(b)(3)'s requirements:  (1) that 'the questions of law or fact common to class members predominate over any questions affecting only individual members (the 'predominance' requirement); and (2) that 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy' (the 'superiority' requirement)." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting Fed. R. Civ. P. 23(a) and (b)(3)); *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (a party seeking class certification under Rule 23(b)(3) "must establish that the four threshold requirements of Rule 23(a) . . . are satisfied" and must also show that Rule 23(b)(3)'s "predominance" and "superiority" requirements are satisfied).  In addition to the express requirements of Rule 23, the Second Circuit has recognized an implied requirement that the class be ascertainable, that is, "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras*, 862 F.3d at 264.  The absence of a

5

"defined class period or temporal limitation" may make the class insufficiently definite, so class definitions should ordinarily have temporal limitations. *Brecher v. Republic of Arg.*, 806 F.3d 22, 25 (2d Cir. 2015); *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, No. 1:14 Civ. 6502 (GHW), 2017 WL 3835339, at *3 (S.D.N.Y. Aug. 30, 2017).

"Rule 23 does not set forth a mere pleading standard." *Wal Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met*." Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *see also In re Am. Int'l. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237–38 (2d Cir. 2012) ("The party seeking class certification must affirmatively demonstrate . . . compliance with the Rule, and a district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met." (internal quotation marks and citation omitted)). "The ultimate question is not whether the plaintiffs have stated a cause of action or will prevail on the merits but whether they have met the requirements of Rule 23." *Gortat v. Capala Bros.*, 257 F.R.D. 353, 362 (E.D.N.Y. 2009) (citing *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)).

## B. Application

### 1. Allegedly Exempt Employees

Nine of the 48 members of the Original Class were salaried employees, and Defendants now argue that those employees were exempt from the NYLL's overtime requirements and therefore that they are not entitled to any overtime compensation. The inclusion of the salaried class members prevents the class from satisfying Rule 23(b)'s predominance requirement. Rule 23(b) requires Plaintiffs to show that "the questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant

6

adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  As such, the requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  Although "commonality, typicality, and predominance overlap," *Wynn v. N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016), predominance is "even more demanding" than the Rule 23(a) requirements.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  Thus, courts are required "to take a 'close look' at whether common questions predominate over individual ones." *Id.* (quoting *Amchem*, 521 U.S. at 615).

The existence of defenses that "affect different class members differently . . . does not compel a finding that individual issues predominate over common ones."  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (quoting *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 227 (2d Cir. 2006)).  "Nevertheless, such individual issues are factor[s] that we must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues, even though standing alone, [they are not] sufficient to defeat class certification."  *Id.* (quotations omitted).  "In short, the question for certifying a Rule 23(b)(3) class is whether 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof' and whether 'these particular issues are more substantial than the issues subject only to individualized proof.'"  *Id* at 138–139 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013)).

Defendants' exemption defense for nine members of the proposed class defeats predominance.  First, the question of whether those nine class members were exempt from the NYLL's overtime requirements is not a subsidiary issue—it is central to determining Defendants'

liability with respect to nearly one fifth of the class.  *See Johnson*, 780 F.3d at 146 (finding that the threshold issue of whether certain class members "had knowingly waived any conflict of interest" by signing individual agreements predominated over the common question of whether defendants had breached their fiduciary duty) ("These are not collateral issues that could be determined in individual hearings after common questions are resolved for the class—they go to the heart of defendants' liability for the class member[s'] alleged injury.").  Indeed, if this inquiry were to reveal that a class member was exempt from the NYLL's overtime requirements, she would not be entitled to overtime and would not share common issues of law or fact with the remaining class members.  *See Romero v. H.B. Auto. Grp., Inc.*, No. 11 CIV. 386 CM, 2012 WL 1514810, at *13 (S.D.N.Y. May 1, 2012) (denying collective action and class certification for proposed class consisting of some employees defendants alleged were exempt and other employees defendants did not allege were exempt because "the [allegedly exempt] parties would first need to litigate whether . . . the putative [class members] were misclassified—i.e., Defendants' liability for overtime wages would need to be established—whereas the non-exempt employees need only determine the amount of relief—if any—to which they are entitled.") (collecting cases).

Second, whether individual class members were exempt from the NYLL's overtime requirements is a complex inquiry that threatens to outweigh issues common to the class.  *Johnson*, 780 F.3d at 138.  Determining whether an employee is exempt is a "complex" inquiry with "a number of subsidiary questions involving whether plaintiffs fall within the Labor Department's criteria" for any of the exemptions Defendants claim.  *Myers*, 624 F.3d at 548 ("[t]he exemption inquiry requires examination of the 'dut[ies] that the employee' actually 'performs . . . .'") (citing 29 C.F.R. § 541.700(a)); *see also Chen v. Hunan Manor Enter., Inc.*, No. 17CIV802GBDGWG, 2023 WL 5574854, at *12 (S.D.N.Y. Aug. 29, 2023) ("A job title alone is insufficient to establish the exempt status of an employee.  Rather, the exempt or nonexempt status of any particular employee must be

determined on the bases of whether the employee's salary and duties meet the requirements of the regulations in this part.") *amended on reconsideration in part*, No. 17CIV802GBDGWG, 2023 WL 8434700 (S.D.N.Y. Dec. 5, 2023).

Here, that inquiry is further complicated by the fact that the allegedly exempt employees held different positions at Goals. The allegedly exempt employees include patient coordinators as well as various administrative staff members with different titles whom the parties characterize as receptionists. Even if Plaintiffs were to show that employees in the same role had similar job duties, the trier of fact would have to analyze each role separately. Therefore, the discovery of a large group of salaried workers reveals that common issues do not predominate among the Original Class.

### 2. Revised Class of Hourly Employees

Plaintiffs contend that even if the Original Class does not satisfy the requirements for class certification because of the issues raised by the exempt employees, the class action can proceed without them. "[A] class of 39 members who received hourly rate of pay is sufficient." Opposition at 12. The Court agrees. A minor modification to the definition of the class can allow the class action to proceed.

"The district court 'is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly . . . .'" *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993) (citing *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)). Instead, "the court is empowered under Rule 23(c)(4) to carve out an appropriate class . . . ." *Id.*

Here, a more limited class, defined to exclude salaried employees, would satisfy the requirements of Rule 23. The definition of this revised class (the "Redefined Class") is:

> All current and former employee receptionists and patient coordinators of Goals who during the period of September 25, 2015 to October 26, 2020, *were paid on an hourly basis* and were not paid overtime compensation at a rate of 1.5 times their regular rate of pay, for all hours in a workweek in excess of 40.

As laid out below, for much the same reasons described in the Court's original class certification opinion, the Redefined Class satisfies the requirements for class certification under Rule 23(c).

   i.      **Numerosity**

The Redefined Class is sufficiently numerous. To satisfy Rule 23(a)'s numerosity requirement, Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible." *Robidoux*, 987 F.2d at 935. "[T]he difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." *Id.* at 935–936. However, "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers. . . . Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id.* at 936 (citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968)).

The Redefined Class satisfies the numerosity requirement. First, it consists of 39 members, only one fewer than the number at which joinder is presumptively impracticable. Second, the putative class members are hourly wage workers seeking relatively modest individual sums, and therefore have limited ability to bring individual actions. These factors weigh in favor of certifying a class smaller than 40. *See, e.g.*, *Hibbert v. Cent. Parking Sys., Inc.*, No. 12-CV-7970 (VSB), 2015 WL 12559891, at *2 (S.D.N.Y. Jan. 14, 2015) (certifying class in NYLL action that contained fewer than 40 members) ("[J]oinder would be impractical given the relative size of the claims at issue and modest financial resources of the class members."). Moreover, as Defendants acknowledge, this motion does not affect the trial of the collective claims certified under the FLSA. It is efficient to try both the collective and class claims together. Therefore, the Redefined Class is sufficiently numerous.

ii.     **Commonality**

The Redefined Class satisfies Rule 23(a)'s commonality requirement for the same reasons discussed in the Court's opinion certifying the Original Class.  To satisfy this requirement, Plaintiffs must show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A question of law or fact is common to the class if the question is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  "The claims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members."  *Johnson*, 780 F.3d at 137 (citing JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS § 4:7 (11th ed. 2014)).  "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices."  *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323 (ALC) (AJP), 2013 WL 1040052, at *15 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted* No. 12 Civ. 6323 (ALC) (AJP), 2013 WL 2473039 (S.D.N.Y. June 7, 2013) (citing *Poplawski v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765, 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012)).

Plaintiffs have established multiple issues common to the class.  Ms. Lawrence and Ms. Warner state that they worked more than forty hours in a workweek and did not receive all of the overtime pay owed to them, that they frequently worked off the clock, and that Defendants manipulated timekeeping equipment and required them to verify false time records.  Ms. Robbins-Bobyn corroborates these claims and asserts that Goals applied these unlawful practices to all patient coordinators and receptionists.  In addition, "all of the class plaintiffs' claims arise under the same New York State statutes and regulations."  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (certifying class bringing NYLL claims).  Defendants raise no

11

arguments as to why a class excluding the salaried employees fails to satisfy Rule 23(a)'s commonality requirement.  Accordingly, the Court holds that there are issues of law and fact common to the Redefined Class.

### iii.   Typicality

Ms. Lawrence and Ms. Warner satisfy Rule 23(a)'s typicality requirement with respect to the Redefined Class for the same reasons discussed in the Court's opinion certifying the Original Class. Pursuant to Rule 23(a)(3), Plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)); *see also Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 654 (S.D.N.Y. 2013) (finding typicality satisfied where the representative plaintiff's claims were "clearly based on the same legal theory and arise from the same practice or course of conduct as the other class members") (quoting *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998) (internal quotation marks omitted)) *abrogated on other grounds by Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020). Analysis of Rule 23(a)(3)'s typicality requirement often converges with that of commonality.  *See Marisol*, 126 F.3d at 376 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13, 102 (1982)).

Ms. Lawrence and Ms. Warner's claims and defenses are typical of the claims of absent class members.  Both worked as receptionists during the class period.  Their claims against Defendants, like the claims of the absent class members, arise out Defendants' policies and course of conduct regarding timekeeping and how receptionists and patient coordinators were paid.  Defendants do not argue the Ms. Lawrence and Ms. Warner fail to meet the typicality requirement.  Accordingly, the Court holds that Ms. Lawrence and Ms. Warner satisfy Rule 23's typicality requirement.

###### iv.    Adequacy

Class counsel will adequately represent the Redefined Class and that Ms. Lawrence and Ms. Warner are adequate class representatives for the Redefined Class for the same reasons discussed in the Court's opinion certifying the Original Class.  Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequacy of representation is evaluated in two ways:  (1) by looking to the qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (quoting *Flores v. Anjost Corp.*, 284 F.R.D. 112, 128–29 (S.D.N.Y. 2012)). With respect to the latter, to satisfy Rule 23(a)(4), "the named plaintiffs must possess the same interests and suffer the same injuries as the class members."  *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Amchem Prods.*, 521 U.S. at 625–26 (internal quotations omitted)).  "Adequacy is twofold:  the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  In evalesuating this requirement, courts consider whether the class representatives are familiar with the action and "whether they are of sufficient moral character to represent a class."  *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011).  Further, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," certification of the class is not appropriate because the representative cannot act in the best interest of the class.  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (internal citation and quotation marks omitted).

The Court is satisfied that the attorneys of the Blau Leonard Law Group, LLC have the requisite experience and qualifications to represent the class.  Blau Leonard Law Group has significant experience in wage and hour litigation, and has acted as lead or class counsel in many

class and collective actions in federal court.  Dkt. No. 126 ¶¶ 5–9.  Defendants do not challenge the adequacy of Plaintiffs' counsel.  In light of Plaintiffs' counsel's experience and the discrete nature of the issues raised in this case, the Court finds that counsel can adequately represent the class in this case.

The Court also finds that Ms. Lawrence and Ms. Warner satisfy the adequacy requirement. They worked as receptionists and were subject to the same practices regarding overtime compensation as all other class members.  They have substantially the same claims against Defendants—that they were not paid for all of the work they did for Goals.  Because they share their claims with absent class members, the Court concludes that Ms. Lawrence and Ms. Warner are capable of vigorously pursuing the claims of the class.  *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.").  In addition, Ms. Lawrence sat for a deposition and Ms. Warner submitted a declaration in support of the motion for class certification, indicating both are familiar with the case and are actively pursuing their claims.  Defendants do not argue that either Ms. Lawrence or Ms. Warner is an inadequate class representative or that class counsel is inadequate.  Accordingly, the Court holds that the Redefined Class satisfies Rule 23(a)'s adequacy requirement.

      **v.**      **Predominance**

The Redefined Class satisfies Rule 23(b)'s predominance requirement.  Defendants now argue that common issues do not predominate between patient coordinators and receptionists because the two roles have different duties and because Plaintiffs assert that patient coordinators

sometimes performed work from home.  Reply at 7.[2]  But Plaintiffs have presented facts showing that all receptionists and patient coordinators were subject to the same unlawful timekeeping and compensation policies.  "Where plaintiffs' claims arise from a common policy and rely on a common legal theory, the predominance requirement is satisfied . . . ."  *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 75 (S.D.N.Y. 2018).  The fact that different class members were impacted by a defendant's policies somewhat differently—here, that patient coordinators performed off-the-clock work both from home and at the office while receptionists performed all off-the-clock work from the office, or that patient coordinators worked some uncompensated overtime hours from home, while receptionists worked all uncompensated overtime hours from the office—does not defeat predominance.  *See, e.g., Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 154 (S.D.N.Y. 2002) (holding that where "different . . . departments kept track of overtime using different methods, differences in departments, job duties, and even factual variations in plaintiffs' claims should not defeat class certification . . . where all plaintiffs claim they were denied overtime"); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 49 (E.D.N.Y.2010) ("[D]ifferences among class members as to the number of hours worked, the precise work they did and the amount of pay they received concern the amount of damages to which any individual class member might be entitled, not the amenability of their claims to Rule 23 certification.").

While the question of how many hours each individual class member worked, including from home, is relevant to proving class members' individual damages, it is "well-established" that "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Seijas v.*

---

[2]  Defendants also conclusorily assert that patient coordinators and receptionists were subject to "different payment structures" because patient coordinators "often execute tasks outside of the office setting – from their homes – without additional compensation."  Reply at 7.  But Defendants neither explain what those "different payment structures" were nor do they offer any evidence in support of their argument.  To the extent Defendants are referring to the presence of hourly and salaried employees in the Original Class, the Redefined Class only includes employees paid on an hourly basis.

*Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010)).  Courts in this district have found that the types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to which each plaintiff might be entitled, "[are] inevitable and do[ ] not defeat the predominance requirement."  *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (holding that questions of liability concerning whether class members were supposed to be paid the minimum wage and for overtime and were not "are about the most perfect questions for class treatment"); *see also Espinoza*, 280 F.R.D. at 128 ("Courts have often found the predominance requirement satisfied despite individual differences in the amount of damages.").

As the Court held previously, when certifying the Original Class, the questions of whether Defendants maintained unlawful timekeeping and compensation practices predominate over any individualized damages assessments.  These questions can be addressed by common proof, including Defendants' business records and testimony by Defendants' employees.[3]  Plaintiffs may also be able to prove damages with common proof, eliminating the need for individualized inquiries at any stage. "It is well-settled that when an employer fails to keep complete records of hours," as Plaintiffs assert that Defendants did, "employees may prove their hours through representative testimony." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 168 (S.D.N.Y. 2014).  In this case, representative testimony could involve testimony from both receptionists and patient coordinators.  Therefore, the Redefined Class satisfies Rule 23(b)'s predominance requirement.

### vi.    Superiority

The Redefined Class satisfies Rule 23(b)'s superiority requirement for the same reasons discussed in the Court's opinion certifying the Original Class.  Defendants do not argue that Plaintiffs have failed to satisfy this requirement.  To demonstrate superiority, Plaintiffs must show

---

[3] For instance, Ms. Robbins-Bobyn asserts that she has personal knowledge of Defendants' practices, including Defendants' manipulation of timekeeping equipment.

that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In analyzing this requirement, the court must consider:  "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.* Together, the predominance and superiority requirements were designed to "cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'" *Amchem*, 521 U.S. at 615 (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., p. 697).

Plaintiffs have met the superiority requirement here.  It is unlikely that the class members would engage in individual action because the amount of potential recovery is low and is likely to be outweighed by the individual cost of litigation.  "Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014); *see, e.g., Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116 (RWS), 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007) (finding class action litigation to be superior where the average claim was $560 and some class members currently worked for the defendant); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (finding the superiority requirement was met where litigation costs were likely to exceed any recovery and some class members were still employed with the defendants).  Defendants do not argue that Original Class failed to satisfy the superiority requirement, and the Court's redefinition of

the class has no significant impact on this analysis.  Accordingly, the Court holds that the Redefined

class satisfies Rule 23(b)'s superiority requirement.

      **vii.**    **Ascertainability**

      Finally, the Redefined Class satisfies Rule 23(b)'s implied requirement that the class be

sufficiently ascertainable for the same reasons discussed in the Court's opinion certifying the

Original Class.  As the Second Circuit recently explained, ascertainability is a "modest threshold

requirement" that precludes certification only if a "proposed class definition is indeterminate in

some fundamental way."  *In re Petrobras*, 862 F.3d at 269.  "That is, a class must be 'sufficiently

definite *so that* it is administratively feasible for the court to determine whether a particular individual

is a member'; a class must be 'defined by objective criteria' *so that* it will not be necessary to hold 'a

mini-hearing on the merits of each case.'"  *Id.* at 266–67 (citations omitted) (emphasis in original).

      In employment matters such as this one, courts in this District have found that a class is

ascertainable where its members can be determined using objective documentation, such as

Defendants' employment records.  *See, e.g.*, *Flores*, 284 F.R.D. at 123; *Gucciardo v. Titanium Constr.*

*Servs., Inc.*, No. 16 Civ. 1113 (LGS), 2017 WL 3738777, at *6 (S.D.N.Y. Aug. 30, 2017); *Fonseca v.*

*Dircksen & Talleyrand Inc.*, No. 13 Civ. 5124 (AT), 2015 WL 5813382, at *5 (S.D.N.Y. Sept. 28, 2015);

*Spencer*,  2013 WL 1040052 at *24.  However, the objective criteria must be sufficiently specific as to

"establish the definite boundaries of a readily identifiable class."  *Brecher*, 806 F.3d at 25 (holding that

plaintiffs failed to meet the ascertainability requirement where the objective criteria used ("owning a

beneficial interest in a bond series") was broad and placed no limit on time or context).

      This requirement is satisfied for the Redefined Class.  Like members of the Original Class,

members of the Redefined Class are identified within Defendants' employment records.  Defendants

did not argue that the Original Class failed to meet the ascertainability requirement, and the

Redefined Class adds only the additional hurdle of identifying which employees were paid by the

hour, which is easily determined with pay stubs.  Accordingly, the Redefined Class satisfies Rule

23(b)'s ascertainability requirement.

## V.      CONCLUSION

Defendants' motion to decertify the class is DENIED.  The Redefined Class is certified.

Ms. Braccia and Ms. Rosado are removed from their roles as class representatives.  The Clerk of

Court is directed to terminate the motion pending at Dkt. No. 233.

SO ORDERED.

Dated:  January 26, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge